## THE FRICK COMPANY *et al.* v. KNUT KETELS *et al.*

MORTGAGE OF *Homestead and Other Real Estate — Right of Mortgagor.* Where a mortgage upon the homestead and other real estate is being foreclosed, the mortgagor has the right, as against the mortgagee and all other creditors and lien-holders whose rights are not prior or superior to those of the holder of the mortgage, to require that before the homestead shall be resorted to for the purpose of satisfying the mortgage debt, all the other mortgaged property shall first be exhausted.

### *Error from Douglas District Court.*

THIS was an action brought in the district court by the Merrimack Savings Bank and against *Knut Ketels*, Catherine Margaretta Louisa Ketels his wife, Julius Ketels, Mary Ketels his wife, Carl Ketels, *The Frick Company*, a corporation organized and existing under the laws of Pennsylvania, and Frick & Company, another corporation existing under the laws of Pennsylvania, the Kansas Loan & Trust Company, E. M. Sheldon and T. B. Sweet, upon certain promissory notes, and to foreclose a real-estate mortgage executed to secure such notes. The defendants answered separately, and replies were filed by a portion of the defendants, and upon the issues as thus presented, at the May term, 1887, the case was tried before the court without a jury, and the court made the following findings and conclusions, to wit:

"On the 23d day of December, 1885, at the October term

of this court for that year, commencing October 12, 1885, the
defendants Frick & Company, a corporation organized under
the laws of Pennsylvania, duly recovered a judgment for money
against the defendant Knut Ketels for the sum of $1,021.61
debt and $20.25 costs.   This judgment was rendered for a
balance due upon the sale of a traction engine and appliances
connected therewith made by Frick & Company to Knut Ke-
tels on the 19th day of March, 1884, and for a threshing-
machine and attachments sold on the 3d day of July, 1884.
On November 1, 1882, the lands described in the petition
were conveyed to the defendant Knut Ketels, in considera-
tion of the sum of $6,050, of which he paid $700 in cash and
secured the balance by his promissory notes together with a
mortgage on the lands conveyed, copies of which are set out
and contained in the plaintiff's petition.   This mortgage was
recorded in the office of the register of deeds of this county,
and together with said notes was assigned to the plaintiff on
the 9th day of April, 1884.   At the date of said conveyance,
November 1, 1882, the defendant Julius Ketels was $22\frac{1}{2}$
years of age and the defendant Carl Ketels was $19\frac{1}{2}$ years
of age, both being the sons of the defendant Knut Ketels and
his wife said Catherine M. L. Ketels, and both resided with
their father and mother as members of the family.   Shortly
before said conveyance the father proposed to the sons that he
would buy a farm if they, the sons, would remain with him
and continue to work faithfully as they had done in the past,
and that they should have part of the farm for their services.
To this the sons assented, and accordingly this farm in ques-
tion was purchased, the father then promising the sons that
they should have the south half, and they promised to remain
at home and work for their father and help pay off the mort-
gage, their wages to go into the payment for said south half.
No definite agreement was made as to the rate of wages, only the
father promised to allow as much as they could earn else-
where, and there was agreement as to the time from which
wages were to be computed; neither had any accounts of such
wages been kept before, nor were such accounts kept after-
ward.   The family continued to live together as they had
heretofore done, the sons working for and under the direc-
tions of the father on the farm and in the winters in the woods
cutting and sawing timber and cutting wood.   This continued
as to both Julius and Carl until March 1, 1886, when Julius
married and moved away.   Carl still continues in the same
relation and service.

"On October 13, 1885, Knut Ketels and wife conveyed by warranty deed the south half of said farm to wit, the S.E. ¼ S. 15, T. 13, R. 18, to said Julius and Carl Ketels, they at the time agreeing to pay $1,500 on said purchase-money mortgage executed to said Robinson, assignee. At that time it was agreed between them that their wages amounted to $2,000, and should be applied in part payment for said south half; the balance being said $1,500 so to be paid on the mortgage. In arriving at said sum of $2,000, Julius's wages were allowed and computed from the time he was 15 or 18 years of age at $15 per month until he was 18; after that $18 per month until he was 21, and then at $20 per month. In like manner Carl's wages were allowed and computed from the time he was 14 or 15 years of age at the same rates allowed Julius; very little if any deductions were made for clothing or anything else, and in fact no accounts had been kept between father and sons. Some small sums had been paid to the sons to pay their admissions to shows and the like, but no credit was claimed or allowed. It appears that Julius claimed a team of horses when the land was bought, one of which was raised on the farm. He also owned a pair of horses and harness in 1885. The sons attended school part of the time until 15 or 16 years of age. They remained in the family working under the direction of the father after they were 21 in the same manner as they had done before that time; he furnishing their clothing in the usual manner between father and son.

"At the time of the conveyance to his sons, Knut Ketels owned some personal property, but it appears that all of his property, except the lands in question, was mortgaged to its full value. At the date of purchase of said engine and machinery Knut Ketels signed a property statement in order to obtain credit therefor, in which he represented that he owned all of said real estate in fee simple, subject only to said purchase-money mortgage. The northeast quarter of said section 15, T. 13, R. 18, was at the time said debt to Frick & Company was contracted and ever since has been occupied by said Knut Ketels and Catherine M. L. Ketels his wife, and family as a residence, and was and is their homestead under the laws of Kansas.

"The Frick Company, also a Pennsylvania corporation, has since the commencement of this suit succeeded by assignment to all the rights and causes of action of the plaintiff

herein. There is due the Frick Company on said notes and mortgage set out in the petition the sum of $5,077.24, and there is due to Frick and Company upon their judgment the sum of $1,142, from defendant Knut Ketels. At the commencement of the trial the said Frick Company moved to dismiss their said foreclosure proceedings as to the east half of the southeast quarter of section 15, township 13, range 18, parcel of said mortgaged premises, to which the defendant Knut Ketels objected, and moved that in the decree of foreclosure and sale to be made under said mortgage that the said southeast quarter of said section 15 should be first sold and his homestead last sold to satisfy said mortgage. Both motions were reserved for consideration and determination with the merits of the whole case after hearing the evidence. It also appears that on the day of the trial, but before commencing the same, the said Frick Company by John H. Mahan, its attorney, entered a formal release of said E.$\frac{1}{2}$ of S.E.$\frac{1}{4}$ S.15, T.13, R.18, on the margin of the record thereof in the office of the register of deeds signed, 'The Frick Company, by John H. Mahan, its attorney.' But the mortgagors did not consent thereto, and objected to such release being considered or allowed. No consideration whatever appears for such attempted release."

Whereupon, the court found as conclusions of law:

"1. The Frick Company as assignees of the plaintiff are entitled to judgment against Knut Ketels for said sum of $5,077.24, and for an order for the sale of said mortgaged premises to satisfy the same. The said mortgage is the first lien upon all of said lands.

"2. The said judgment of Frick & Company was and is a lien upon the southeast quarter of section 15, T.13, R.18, from the 12th day of October, 1885, prior and superior to any interest of Julius Ketels and Carl Ketels in said lands, and subject only to the lien of said mortgage. [To which conclusion the said defendants Julius and Carl Ketels duly except.]

"3. The equity of the family in the homestead is superior to the equity of the judgment creditors, (*La Rue v. Gilbert*, 18 Kas. 222,) and this cannot be defeated by the attempted release of a part of the mortgaged premises without the knowledge or consent of the mortgagor. Therefore the motion of the defendant Knut Ketels to have the homestead last offered for sale to satisfy the mortgage debt is sustained, and the judgment will so provide. For the same reason, and upon the

same authority, the motion of the Frick Company to dismiss the foreclosure proceeding as to the east half of the southeast quarter of said section 15 is overruled. [To both of which rulings and conclusions the said Frick Company and Frick & Company duly and severally except.]"

Judgment was rendered in accordance with the foregoing findings and conclusions; and the Frick Company and Frick & Company, as plaintiffs in error, bring the case to this court, making all the other defendants below, defendants in error.

*J. W. Green,* for the Frick Company, plaintiff in error.

*V. H. Harris,* and *Rossington, Smith & Dallas,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: The Frick Company, a corporation, holding a mortgage upon all the real estate of Knut Ketels, including his homestead occupied by himself and wife and family, and the company prosecuting an action in the district court of Douglas county to foreclose such mortgage as against all such real estate, attempted, without the consent and against the will of the mortgagors, Ketels and wife, to release the mortgage of record as to that portion of the real estate not included in the homestead, and moved the court to dismiss its foreclosure action as to that portion of the real estate, so that it might proceed in its foreclosure action as against only the homestead, which motion the court overruled and required the Frick Company to proceed in its foreclosure action as against all the mortgaged property, and rendered a judgment requiring that the Frick Company in satisfying its foreclosure judgment should first exhaust all the mortgaged property not included in the homestead before resorting to the homestead, although such a procedure might leave Ketels' other creditors who were asking for a marshaling of the securities, without any security for their debts. This attempted release and dismissal above mentioned were originated for the purpose that Frick & Company, another corporation, different from

the Frick Company, might enforce a judgment lien which it had against the land which the Frick Company desired to release. This judgment lien extended only to the property not included in the homestead, and was also inferior and subsequent to the mortgage lien. We do not think that the court below committed any error in its aforesaid rulings. (*Butler v. Stainback*, 87 N. C. 216, 220; *Wilson v. Patton*, 87 id. 318, 324; *Dickson v. Chorn*, 6 Iowa, 19; *Foley v. Cooper*, 43 id. 376; *Bartholomew v. Hook*, 23 Cal. 277; *McLaughlin v. Hart*, 46 id. 638; *Brown v. Cozard*, 68 Ill. 178; *McArthur v. Martin*, 23 Minn. 74; *Ray v. Adams*, 45 Ala. 168; *Marr v. Lewis*, 31 Ark. 203; *Colby v. Crocker*, 17 Kas. 527; *La Rue v. Gilbert*, 18 id. 220.)

Mr. Freeman, in his work on Executions, uses the following language:

"The more reasonable view is, that the equity of the homestead claimants to retain their home is at least equal to that of their creditors to have it sold, and therefore that chancery will not aid the latter by compelling the judgment creditor to first resort to the homestead. Perhaps a more difficult question is, may one who has a lien on homestead and other property be compelled by the homestead claimants to first resort to the latter? On the one side, it is insisted that the right to compel a marshaling of assets never existed in favor of judgment debtors, but only in behalf of persons claiming under them, and that the creation of the lien by the homestead claimants was, in effect, an agreement on their part that the lien-holder might at his discretion sell any of the property which was subject to such lien, and that such agreement precludes such claimants from exercising any control over such discretion. But homestead laws should be liberally construed, and no intention should be presumed, nor should any interpretation be indulged which is at variance with the natural and obvious purpose of the parties. The claimants, in the absence of any expression of a contrary intent, should be presumed to intend no further peril to their homestead than necessity demands, while he who received a mortgage from them should be regarded as obtaining a mere security for his debt, and not the right to employ that security in such a mode as to needlessly imperil the homestead. Hence a mort-

gage on a homestead and other property may fairly be interpreted as a waiver of the homestead right only so far as may be necessary to secure the debt; or, in other words, as a stipulation that the homestead may be sold, if the other property proves inadequate to satisfy the mortgagee's demand. Under this interpretation, the homestead claimants are entitled to compel the sale of the other property in preference to the homestead, and need not submit to the sale of the homestead until the other securities have been exhausted, without fully discharging the debt." (2 Freeman on Executions, § 440.)

It is also said in the case of *Wilson v. Patton,* supra, among other things as follows:

"Lest it may be supposed we have overlooked the point raised in the argument before us with regard to marshaling the fund, we take occasion to say, that in our opinion that rule of equity has no application to a case where the homestead is involved. It is a 'consecrated right' granted by the constitution, and is an equity superior to all other equities."

See also the reasoning in the case of *Colby v. Crocker,* 17 Kas. 530, *et seq.* If anything is said or decided in the case of *Chapman v. Lester,* 12 Kas. 592, contrary to the views herein expressed, the same is hereby overruled. But this decision is not in conflict with that, as the following language, used in the opinion of the court in that case, will show, to wit:

"It may also be proper to say that we do not deny that a court of equity may in a decree of foreclosure of a mortgage upon a homestead and other property, direct that the homestead be the last property offered for sale by the sheriff."

We think no error was committed by the court below. In our opinion where a mortgage upon the homestead and other real estate is being foreclosed, the mortgagor has the right, as against the mortgagee and all other creditors and lienholders whose rights are not prior or superior to those of the holder of the mortgage, to require that before the homestead shall be resorted to for the purpose of satisfying the mortgage debt, all the other mortgaged property shall first be exhausted.

The judgment of the court below will be affirmed.

All the Justices concurring.