Note.—See under (1) 33 Cyc. p. 899. (2) 29 Cyc. p. 451 (1926 Anno). (3) 33 Cyc. p. 759. (4) 33 Cyc. p. 767. (5) 33 Cyc. pp. 766, 768. (6) 29 Cyc. p. 488. (7) 33 Cyc. p. 889.

---

## FIRST NAT. BANK OF OKLAHOMA CITY v. FOSTER.

No. 13874—Opinion Filed Nov. 25, 1924.

Rehearing Denied Feb. 24, 1925.

**1. Marshaling Assets and Securities—Statutory Rule Applied.**

A. assigned a note and mortgage to plaintiff, and thereafter procured, without consideration, reassignment thereof and possession, for collection. Subsequently, by felonious fraud, A. delivered and assigned same to defendant, together with other securities, as collateral for prior and future loans from defendant. Plaintiff had no lien upon or interest in such other securities. Held, under section 7418, Comp. Stat. 1921, for marshaling assets, defendant was required to resort to its other securities first, and plaintiff was entitled to the possession of such note and mortgage, since defendant's other securities were sufficient to protect its interest.

**2. Same—Duty to Marshal not Affected by Bankruptcy.**

Such duty of defendant to resort to its other securities was not altered by the fact that A. had been adjudicated bankrupt after the possession of, and title to such note and mortgage had passed from A. to defendant, and the trustees of A. in bankruptcy asserted no claim upon such note and mortgage, but prior to trial had executed quittance to defendant of all securities of the bankrupt held by defendant, including such note and mortgage.

**3. Same—Jurisdiction of State Court.**

Defendant could not challenge the jurisdiction of the state court to compel such marshaling, under syllabus pars. 1 and 2, supra, irrespective of the Bankruptcy Act providing for concurrent jurisdiction of state and federal courts with reference to trying title to securities in possession of, or claimed by, a trustee in bankruptcy.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Ira T. Foster against First National Bank of Oklahoma City for recovery of note and mortgage. Judgment for plaintiff. Defendant appeals. Affirmed.

Wilson, Tomerlin & Threlkeld, for plaintiff in error.

Everest, Vaught & Brewer, for defendant in error.

Opinion by ESTES, C. The parties will be referred to as they appeared in the trial court, inverse to the order here. Ira T. Foster sued the First National Bank of Oklahoma City, herein referred to as the bank, to recover a note for $3,400, and a mortgage, the latter securing the former on real estate in Garvin county, Okla.—praying, in the alternative, that if such recovery be refused the court require an accounting by defendant of all property in its hands belonging to the Aurelius-Swanson Company, Inc., herein called the company; that on such accounting the defendant be required first to exhaust other collateral and security before having recourse to said note and mortgage. Said note and mortgage had been executed in 1916 by one Sublette and wife to said company for a loan of money, and was to become due in 1926. In 1917 said company sold and duly assigned said note and mortgage to plaintiff. Plaintiff, who was old, delivered same to the company in 1918 for safe keeping, through his son and custodian who had then been called to arms. In 1921 said company being indebted to defendant in a large sum, made a pledge agreement to se-

cure same and also future advances, hypothecating a large number of described securities thereunder, and providing, among other things, that the company might withdraw, for collection, securities so deposited by substituting others of equal value. While operating under this arrangement the company had withdrawn $10,000 worth of such securities, neither substituting others nor paying the proceeds. On June 8, 1921, the company wrote plaintiff, who lived in Wichita, Kan., that said Sublette loan was to be liquidated. It enclosed an assignment of the note and mortgage to itself and asked plaintiff to execute and return same, stating that a new loan would be furnished plaintiff or remittance made to the plaintiff for the same. The letter added "we had asked the bank to write to you for this assignment. However, upon second thought we deem it best to write you ourselves. You can, therefore, send the assignment direct to us and we will fix the matter up for you." On the same day the bank wrote plaintiff "we are holding note and papers in connection with a $3,400 first mortgage farm loan made to E. G. Sublette covering farm in Garvin county, Okla. We wish you would please let us know if you still hold an interest in this mortgage." Plaintiff replied to the bank that he was sending the assignment to the company, stating also "they will attend to the same." Plaintiff executed and sent to the company the assignment so enclosed, and asked the company to remit. The company recorded the assignment in Garvin county on June 21, reinvesting itself with the legal title to the note and mortgage for collection as plaintiff was led to believe.

The company had delivered the manual possession of the Sublette note and mortgage to the bank theretofore in March, and the bank had accepted same under said pledge agreement, without, however, any new consideration, and the bank still holds same. The company executed an assignment of said note and mortgage to the bank on May 2nd, and same was recorded on June 21st, the day on which the company's assignment was recorded. In the fall of 1921, long after the bank became thus a holder of the note and mortgage as pledgee—with the which apparent title, plaintiff had clothed the company thereunto—the latter was duly adjudicated bankrupt and trustees appointed also for its subsidiaries. Thereafter, in December, 1921, plaintiff filed this suit in the district court of Oklahoma county. Thereafter, said trustees filed three several suits in the same court for large sums for alleged usury

in the matter of loans theretofore made by the bank to the company. On March 22, 1922, said trustees entered into a stipulation with the bank, duly approved by the court of bankruptcy, that said usury suits be settled and dismissed; that the balance due the bank from the several bankrupt estates, including interest and attorneys' fees, was $118,409; that the securities in the hands of the bank, including the Sublette note and mortgage— of the aggregate face value of $190,000—were of the value of $128,409.50. By said stipulation, the bank also paid $10,000 in cash to the trustees—being the difference between said indebtedness due the bank and said value of securities held by it. In effect, said stipulation was also a quittance of all claims of the trustees to the securities in the hands of the bank. The trial court made findings of fact and thereon rendered judgment for the plaintiff against the bank for the recovery of the Sublette note and mortgage, together with all interest coupons attached, and also for $204 interest collected by the bank on such note, with interest on the last named sum at six per cent. from date of its collection, from which the bank has duly appealed.

It is not necessary to discuss the first contention, that the bank was a bona fide holder for value before maturity of the said note and mortgage. Let that be conceded. There is no merit in the second assignment that plaintiff estopped himself from claiming or asserting title to said note and mortgage as against the bank. The bank was not misled or prejudiced in any manner thereby. Under the view that we take of this case the doctrine of estoppel is not applicable to the plaintiff, even if said correspondence, between the bank and the company on one hand and plaintiff be sufficient in any event to constitute estoppel.

The judgment of the trial court should be affirmed on the ground that the plaintiff was entitled to recover the Sublette note and mortgage because the bank held sufficient other assets as collateral to pay all the indebtedness due it from the company. Section 7418, Comp. Stat. 1921, in part, is:

"Where one has a lien upon several things and other persons have subordinate liens upon or interests in some but not all of the same things, the person having the prior lien, if he can do so without the risk of loss to himself, or injustice to other persons, must resort to the property in the following order, on the demand of any interested party:

"First. To the things upon which he has exclusive lien.

"Second. To the things which are subject to the fewest subordinate liens."

The chancery rule is stated in section 1414, Pomeroy's Equity Jurisprudence. It may be noted that the foregoing statute for marshaling assets is in favor of persons having "subordinate liens upon or interest in" some of the things, whereas the chancery rule runs only in favor of those having "liens" upon some of the things. The rule of marshaling assets is so well established by the common law, as well as by said statute in this state, that it only remains to be seen whether the instant case is proper for its application. Adverting to said stipulation, the bank agreed that the securities which it held at that time, including the Sublette note and mortgage, were worth $10,000 more than the indebtedness due it. The trial court properly held that the bank was bound by the stipulation, having failed on the burden to show other value. It accepted said securities for all indebtedness due it, and paid said last named sum as an overplus, and in addition thereto settled three usury suits involving large sums. This settlement with the trustee was made after issues were joined in the instant case, but before trial. The filing of the instant suit in December was the "demand of an interested party" from which a duty of the bank arose, under said marshaling statute. The bank could and should have delivered the Sublette note and mortgage to the plaintiff, and perhaps could have deducted the amount thereof from the overplus paid to the trustees. It could and should have done so if the trustees had no interest in said note and mortgage. It is well known that a trustee in bankruptcy is vested only with the bankrupt's title to or equity in property. It is clear from this record that as between the bankrupt (the company) and plaintiff, the former never had any right, title, or interest in and to said note and mortgage. Its assignment of same to defendant bank was a felonious fraud upon plaintiff. The nominal title which it had held by reassignment from plaintiff, had passed from it to the bank, before the adjudication. At the time of the adjudication the bankrupt company had no lien or interest in said note and mortgage. Possession of the note and mortgage had long since passed from the company to the bank. The trustees could not have objected to exception of said note and mortgage in the evaluation of the said securities without asserting some claim to the note and mortgage. The rule for marshaling assets required defendant bank to resort to the other assets for its recoupment, inasmuch as the trustees made no claim to the note and mortgage. In pursuance of defendant's duty to marshal if the trustees were not willing to make such deduction, and were unwilling to intervene in this case and assert their title to this note and mortgage, then it was the duty of defendant bank to interplead the trustees for such purpose. The bank could not ignore its duty to the plaintiff in this behalf since it had in its possession more than sufficient assets otherwise to satisfy itself. It was not the duty of the plaintiff to interplead the trustees because, first, the trustees never asserted or claimed any interest in, or had posssssion of said note and mortgage, but had made quittance thereof before trial, and, second, because of the said demand of plaintiff, the duty to act was upon the bank, under said statute. It could ask to be paid only once. It had no interest in said note and mortgage even as a bona fide pledgee thereof except for security. Since said note and mortgage were not required for such purpose, defendant bank cannot claim them otherwise for in equity they in fact belong to plaintiff. Plaintiff had no interest in or claim to, any other security held by the bank. The case of Breed v. National Bank of Auburn, 171 N. Y. 648, 63 N. E. 1115, affirming the Supreme Court, as reported in 68 N. Y. Supp. 68, 57 App. Div. 468, on one branch of that case, is in point. There "W" assigned a bond and mortgage to plaintiff, but the same was redelivered to "W" for collection, and he subsequently assigned the bond and mortgage to defendant, together with other securities, as collateral for prior loans obtained from defendant. The other securities were sufficient to protect the interest of defendant. The court held that plaintiff was entitled to his bond and mortgage, and to require the defendant to resort to other securities. Therein it is stated:

"* * * We are of the opinion that in any event, upon the evidence before us, the defendant is not entitled to retain the bond and mortgage in suit, for the reason that it has other securities collateral to the Rogers indebtedness which it received at the same time, and which, for aught that appears, are of sufficient value to fully pay and satisfy the same. In effect, the defendant is secured by two funds—the bond and mortgage in suit, which is the plaintiff's sole security, and the other securities assigned to it at the same time. The rule applicable to such a situation is stated by Pomeroy in his work on Equity Jurisprudence, sec. 397, as follows:

" 'The holder of the security on two funds

is compelled to shape his own remedy so as to preserve, if possible, the equity of the one whose lien extends to but one fund'."

Let it be remembered that said marshalling statute protects plaintiff as to his "interest" in said note and mortgage. Plaintiff was the owner of same subject to any rights defendant bank had therein because of acquiring bona fide title thereto as pledgee. See Dorr v. Shaw, 4 Johns. Ch. (N. Y.) 17; Evertson v. Booth, 19 Johns. (N. Y.) 486; Thompson Nat. Bank v. Corwine, 89 Fed. 774, affirmed in 95 Fed. 54.

Defendant also strenuously contends that the state court herein drew to itself, after the adjudication, property of the bankrupt or in which the bankrupt claimed an interest—said note and mortgage—and had no jurisdiction thereunto. As shown, the bankrupt had neither possession nor any title to the note and mortgage at the time of the adjudication, and the trustees never claimed or attempted to assert any interest in the same. They were listed among the securities which the bank held at the time of the settlement between the trustees and the bank. The authorities cited by the bank deal, for the most part, with property in the actual possession of the bankruptcy court. We understand such court may sell property or equities in its possession, and trustees may bring suits for possession, if claimed, and to determine values of securities and all other necessary purposes.

In Taubel-Scott-Kitzmiller Company v. David I. Fox et al., the Supreme Court of the United States (264 U. S. 426, 68 L. Ed. 77), holds that a bankruptcy court has no jurisdiction to adjudicate, by summary proceedings, controverted rights as to property not in possession of the trustees. In the opinion by Mr. Justice Brandeis, it is said:

"In this case, the sheriff had, before the filing of the petition in bankruptcy, taken exclusive possession and control of the property; and he had retained such possession and control after the adjudication and the appointment of the trustees. The bankruptcy court, therefore, did not have actual possession of the res. The adverse claim of the judgment creditor was a substantial one. The bankruptcy court, therefore, did not have constructive possession of the res. Neither the judgment creditor nor the sheriff had become a party to the bankruptcy proceedings."

It is unnecessary here to discuss whether the parties or the trustees might have brought suit in said state court to determine any of the contentions here made by the bank, under the concurrent jurisdiction provided by the bankruptcy act. Under no theory may the bank here prevail. It is recommended that the judgment of the trial court be affirmed.

By the Court: It is so ordered.