MUSKOGEE INDUSTRIAL FINANCE CORPORATION, a Corporation, Plaintiff in Error,

v.

C. P. PERKINS, Defendant in Error.

No. 38853.

Supreme Court of Oklahoma.

May 9, 1961.

A. James Gordon, McAlester, for plaintiff in error.

Arnote, Bratton & Allford, McAlester, for defendant in error.

PER CURIAM.

Parties are referred to as in the trial court, or by name. This was a mortgage foreclosure action in which Muskogee Industrial Finance Corporation, plaintiff, sued C. P. Perkins and J. W. Kaiser, as defend-

ants. The petition alleged, among other things, that plaintiff held a mortgage on certain property, signed by J. W. Kaiser; that defendant C. P. Perkins had held a prior mortgage on the same property, but that the debt secured by said mortgage had been paid in full, thereby making plaintiff's mortgage a first mortgage; and prayed for a money judgment against Kaiser, foreclosure of the mortgage, sale of property, etc. Perkins' answer and cross-petition alleged, among other things, that the debt secured by the prior mortgage had never been fully paid; that the property concerned was the joint property of Kaiser and his wife; that two subsequent mortgages had been executed to Perkins; that the debts secured thereby were past due and unpaid; and prayed for a money judgment against Kaiser, foreclosure of the mortgages, sale of property, etc., with the prior mortgage being accorded first priority.

For convenience, we here list the four mortgages in the order of dates of execution (recording was in the same order):

Mortgage 1: From J. W. Kaiser and his wife to Perkins;

Mortgage 2: From Kaiser to Muskogee Industrial Finance Corporation;

Mortgage 3: From Kaiser to Perkins;

Mortgage 4: From Kaiser and his wife to Perkins.

Mortgages 1 and 2 describe other property as well. In all cases, the promissory notes evidencing the debts secured by the mortgages were signed by Kaiser only and not by his wife; and in all cases, the mortgages were recorded very shortly after the dates of execution. No question of notice, actual or constructive, is involved in this appeal.

Trial was had to the court, a jury having been waived, and at the conclusion thereof, a judgment and decree of foreclosure was entered finding for plaintiff Muskogee Industrial and defendant and cross-petitioner Perkins in the various amounts prayed for under the respective mortgages. Priority of liens was established, and in accordance therewith, the proceeds of the foreclosure sale were ordered to be applied first to the payment of costs, second to Perkins as reimbursement for certain taxes paid, and thereafter as follows: third, to Perkins, $7,348.50 under Mortgage 1, said amount to be paid from the proceeds of the sale of the *one-half interest owned by Kaiser*; fourth, to Muskogee Industrial, $8,749.89 under Mortgage 2, said amount to be paid from the proceeds of the sale of the one-half interest owned by Kaiser; fifth, to Perkins for amounts due under Mortgage 3; and sixth, to Perkins for amounts due under Mortgage 4. In this summary, we have disregarded interest and attorney fees in the interests of clarity.

Muskogee Industrial appeals, and here argues two propositions:

The first one is to the effect that the debt secured by Mortgage 1 had been paid and the lien of the mortgage thereby extinguished, thereby making Mortgage 2 a first mortgage, and that the judgment was therefore contrary to law and against the clear weight of the evidence.

The evidence showed that at the time of the re-financing arrangement which resulted in Mortgage 3, Kaiser needed more money and apparently did not tell Perkins of Mortgage 2 to Muskogee Industrial. In the paper work pursuant to the re-financing arrangement, Kaiser gave a check for $7,422 (the exact amount then due under Mortgage 1) to Perkins, and Perkins gave Kaiser a check for $20,000, taking a new note and mortgage in that amount plus interest, with the mortgage listing additional property as well as that here concerned. It was shown that at various times after the date of Mortgage 1, Kaiser made payments in substantial amounts to Perkins without designating the particular indebtedness to which the payment was to be applied. It is agreed that Perkins had a right to choose the particular indebtedness upon which to apply the payments, and no issue is made of that point here. No release of Mortgage 1 was ever demanded or given, and the note secured thereby was never returned to Kaiser. Both Perkins

and Kaiser testified that it was never intended that Mortgage 1 should be released, although Perkins freely admitted that at the time of the execution of Mortgage 3, he had no actual knowledge of the intervening mortgage in favor of Muskogee Industrial Finance Corp. Maxine Pate, bookkeeper for Perkins, testified with regard to the re-financing arrangement, that the exchange of checks ($7,422 from Kaiser to Perkins, $20,000 from Perkins to Kaiser) was made as a convenience to her. She said: "Well, my bookkeeping was rather crude, and instead of adding this on, and since we did want to add more security, instead of adding this on this original ledger sheet we wanted to set up our payments over again, and it was purely a bookkeeping convenience for me, the way we did it." On cross-examination, she said on this point: "Well we would have had to had (sic) two separate payments, so just—it was really just a continuation of this note, adding more security and advancing more cash." In answer to a question as to whether "you couldn't have taken a mortgage on the other security and held your mortgage on the Car Lot too, without that interfering with your bookkeeping", she said: "Well the value of the other security wouldn't have been worth the additional cash that we were advancing. I say we— that Mr. Perkins was advancing." There was no objection to any of the quoted testimony.

There was also evidence that when Kaiser gave the $7,422 check to Perkins, his bank account was overdrawn, and that it could not clear, and did not clear, the bank, until the $20,000 check from Perkins to Kaiser was deposited; and that both Kaiser and Perkins knew of these facts.

■ As mentioned before, a jury was waived in this case, and the court became the trier of the fact. Under those circumstances, we are bound by the general rule stated as follows in Strahm et al. v. Murry, 200 Okl. 640, 199 P.2d 603:

"Where a jury is waived in a law action and the cause is tried to the court, the judgment will be given the same effect as the verdict of a properly instructed jury, and if reasonably supported by any competent evidence will not be disturbed on appeal."

This is not to be confused with the general rule in a purely equitable action, to the effect that a judgment will not be reversed unless it is "clearly against the weight of the evidence."

Plaintiff first argues under this proposition that the debt secured by Mortgage 1 was paid and the lien thereof extinguished, and cites 36 Am.Jur., Mortgages, Sec. 406, page 890 and Sec. 415 at page 895 to the effect that when such is true, the next encumbrance junior thereto becomes a first lien. These citations are of no assistance here, because they *assume* the very thing here in dispute—whether or not the debt secured by the prior mortgage had in fact been paid.

■ Plaintiff also cites language from the body of the opinion in Brady v. Interstate Mortgage Trust Co., 96 Okl. 293, 223 P. 145, where both an original note and mortgage, and a renewal note and mortgage, were involved. The Brady case was before this court pursuant to a sustained demurrer of plaintiff to defendant's evidence, and a directed verdict for plaintiff. A demurrer of course admits the truth of all facts which the evidence tends to prove. There was evidence in the Brady case that at the time of the execution of the renewal note and mortgage, it was the *intention of the parties* that the old mortgage should be released. This court reversed and remanded for a new trial and in the applicable syllabus said that execution of a new mortgage would release and discharge the old one if the execution of the new one were " * * * intended by the parties to operate as a payment or satisfaction".

A different situation exists here. The intention of the parties is the very thing in issue, and the Brady case is therefore not applicable.

Plaintiff next argues that the finding of the trial court to the effect that there was

no intention on the part of Kaiser and Perkins to release the lien of Mortgage 1 is not sustained by the evidence. He cites a paragraph from 36 Am.Jur., Mortgages, Sec. 407, page 891 beginning, "There are cases in which a mortgage, when paid, may be kept alive for other purposes". The ensuing discussion rests upon that premise, which does not exist here. Defendant did not contend that the mortgage had been paid but kept alive for "other purposes". The contention was that it had actually never been paid.

Plaintiff quotes from Vol. 22, Words and Phrases, p. 4, to the effect that " 'Intent' is a subjective fact *seldom* susceptible of proof by direct evidence, and ordinarily it must be ascertained by a consideration of the *objective* facts and the inferences fairly to be drawn therefrom." (Emphasis supplied.) Note that the definition does not completely rule out the use of "subjective" evidence on the question of intent.

█ Plaintiff then lists the following as "objective" evidence that the intention was that the lien of Mortgage 1 should be released when Mortgage 3 was executed: Kaiser gave Perkins a check in the exact amount remaining due on Mortgage 1; Kaiser then gave Perkins a new note and Mortgage 3, neither of which showed on its face that it was a renewal note or mortgage; the old note was retained by Perkins merely as a matter of custom; there is no evidence of any conversation between Kaiser and Perkins to the effect that the transaction was a renewal agreement; there is no instrument or writing showing that the transaction was a re-financing arrangement; that Perkins did not actually know of Mortgage 2, and therefore had no reason for trying to preserve the lien of Mortgage 1.

But there was also "objective" evidence on the other side of the question: although both Kaiser and Perkins were experienced business men, no release of Mortgage 1 was ever demanded or given; the check for $7,422 was given by Kaiser to Perkins at a time when the Kaiser bank account was overdrawn, and both parties knew this; Perkins' ledger sheets on the Kaiser account contained the notation "refinanced" with regard to the old debt; and it would seem to be simply a matter of good business practice in financing transactions for the lender to keep as much, and as good, security as possible.

Also, there was the positive and uncontradicted testimony of both Kaiser and Perkins that *it was never intended* that Mortgage 1 should be released. In this connection, Drum Standish Commission Co. v. First National Bank and Trust Co., 168 Okl. 400, 31 P.2d 843, 849, involved a situation where Mortgage 1 was taken by First National; Mortgage 2 was taken by Drum Standish, and Mortgage 3 was then taken by First National in a re-financing arrangement at which time additional money was advanced; when Mortgage 3 was taken, Mortgage 1 was actually *released of record*. In holding that the taking of Mortgage 3 did not release Mortgage 1, because a contrary intention appeared, this court quoted with approval from New England Mortgage Security Co. v. Hirsch et al., 96 Ala. 232, 11 So. 63, to the effect that " * * * whether the taking of a second mortgage is a payment of the first depends upon the *intention of the parties*." (Emphasis supplied.)

We hold that the finding of the trial court that there was no intention on the part of Kaiser and Perkins to release the lien of Mortgage 1 is supported by competent evidence reasonably tending to support the judgment, and plaintiff's first proposition is therefore without merit.

█ Plaintiff's second proposition is that the court committed reversible error in establishing and adjudging the priorities of the various mortgages and in ordering distribution of the proceeds of sale. The particular complaint is that the third priority (to Perkins, $7,348.50 under Mortgage 1) was ordered to be paid from the proceeds of the sale of the *one-half interest* in the

property owned by Kaiser, whereas it should have been ordered paid from the proceeds of the sale of the *entire* interest in the property (owned by Kaiser and his wife), since both Kaiser and his wife signed Mortgage 1. The reason for the contention is that the property to be sold in this case will probably not bring enough money to satisfy all claimants. Since plaintiff, which has the fourth priority, is restricted in its recovery by the trial court's judgment to the one-half interest owned by Kaiser, there will be less money left with which to pay plaintiff if the Perkins claim under the third priority is charged against only the one-half interest of Kaiser.

■ In support of this contention, plaintiff quotes Russell et al. v. Freeman, 202 Okl. 417, 214 P.2d 439, to the effect that a junior mortgagee has the right to insist that the recovery of the senior mortgagee shall be restricted to the amount to which he is strictly entitled, and that there shall be such a marshalling of securities as to leave him (the junior mortgagee) the best possible residuum. With the first part of this rule there can be no quarrel; the second part, having to do with the equitable doctrine of marshalling of assets and securities, is not applicable here because such doctrine, by its terms, applies only where the prior mortgagee has a lien on two funds (or properties) in the hands of the *same debtor,* and the junior mortgagee has a lien on only one of them. 55 C.J.S. Marshaling Assets and Securities § 1(a). Here, the only debtor involved is Kaiser (his wife did not sign any of the promissory notes), and only one fund or property is involved—Kaiser's interest in the property described on both Mortgages 1 and 2. If Kaiser had mortgaged properties A and B to Perkins, and later mortgaged property A only to Muskogee Industrial, then the doctrine of marshalling assets and securities might apply. Of course such is not the case.

Title 15 O.S.1951 § 371 provides:

"A surety is one who, at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor."

■ Since the promissory notes executed in connection with the mortgages were executed by J. W. Kaiser only, under the express provisions of the above statute, Ila Eugenia Kaiser was only a surety for the debts of her husband.

Title 15 O.S.1951 § 384 provides:

"Whenever property of a surety is hypothecated with the property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation."

Therefore, Ila Eugenia Kaiser was entitled to have the property of the principal, who was her husband, first applied to the discharge of Mortgage No. 1.

The effect of the priority and distribution of proceeds of sale contended for by plaintiff would be to subject the property of the surety on Mortgage 1 indirectly to the payment of plaintiff's claim under Mortgage 2, which she did not sign.

We hold that the trial court correctly established the priorities of liens and distribution of proceeds of sale.

The judgment of the trial court is affirmed.

The Court acknowledges the aid of Supernumerary Judge N. S. Corn in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.