**In re John R. and Elsie B. MARTIN, Debtors.**

No. 78165.

Supreme Court of Oklahoma.

May 10, 1994.

injure the right of Morrow to receive the benefits of their [Morrow and Bank] agreement. *See Hinson, supra* note 21 at 553.

Kenneth L. Spears, Derice A. Madoux, Oklahoma City, for debtors.

Scott Meacham, Meacham and Meacham, Clinton, for secured creditor, Oklahoma Bank and Trust Co.

W. Rogers Abbott, II, Rogers Abbott & Associates, Oklahoma City, for chapter 12 standing trustee, Jack Cornelius.

SIMMS, Justice:

This is a Certified Question of Law from the United States Bankruptcy Court for the Western District of Oklahoma based upon the following facts.

John R. Martin and Elsie B. Martin, debtors, filed a petition for relief under Chapter 13 of the United States Bankruptcy Code and subsequently converted the case to one under Chapter 12 of that code. Debtors own three parcels of property:

(1) Lot 10, Block 10, Sights Acres Addition to the City of Clinton, Custer County, Oklahoma ("Homestead");

(2) Northwest Quarter of Section 36, Township 13 North, Range 18 W.I.M. ("Farm property"); and,

(3) An undivided 100 acre mineral interest underlying the Northwest Quarter of Section 30, Township 12 North, Range 17 W.I.M. ("Minerals").

Debtors' bankruptcy schedules place the following values on the properties: (1) $53,-250.00 on the homestead; (2) $45,600.00 on the farm property; and, $50,000.00 on the minerals. However, the secured creditor, Oklahoma Bank & Trust Company (Bank), disputes the values Debtors have placed on the properties, and a hearing on Bank's valuation motion is to be reset by the parties. Nevertheless, Debtors' indebtedness exceeds the value of the properties.

Debtors are indebted to the Small Business Administration ("SBA") in the amount of $44,057.65 with the debt secured by a first lien on the homestead and a second lien on the farm property. The indebtedness of Debtors of $40,510.26 to the State of Oklahoma/Commissioner of the Land Office ("CLO") is secured by a first lien on the farm property. Finally, Debtors are indebted to Bank in the amount of $151,346.94, and Bank is secured by a third lien on the farm property and first lien on the minerals.

Relying upon 42 O.S.1991 § 17 and 24 O.S.1991 § 4, Bank requested an order of marshalling of Debtors' assets. Bank urged the Bankruptcy Court to declare SBA's claim be satisfied out of the homestead property. With SBA's claim satisfied, Bank could then satisfy a part of its claim out of the excess value of the farm property after CLO's claim was satisfied. If the court excluded the homestead from marshalling, then CLO would have first priority to satisfy its claim against the farm property with SBA being entitled to the excess of that farm property. Bank's interest in including the homestead property in the marshalling of debtors' assets is quite clear.

Debtors objected to such marshalling, contending that Okla. Const. Art. XII, § 2 and 31 O.S.1991, § 1, as well as public policy, prohibit Bank from compelling the satisfaction of SBA's claim from the homestead. Debtors further requested an order compelling the creditors to marshall their claims away from the homestead. The Chapter 12 Trustee aligned with Debtors in contending the homestead should be excluded from the marshalling of assets.

All the parties agreed that the issue of whether homestead property should be excepted from the marshalling of assets statutes was an issue governed by state law. Concluding that the issue was one of first impression, the Bankruptcy Court has now certified the following question of law to this Court pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991, § 1601, et seq.:

"Do the Oklahoma Constitution and the Oklahoma exemption statutes create or authorize an exception to the marshalling of assets when homestead property is involved, or do the Oklahoma marshalling statutes of Title 42, § 17 and Title 24, § 4

permit creditors to compel the marshalling of assets against homestead property?"

■ Our inquiry must begin with the doctrine of marshalling of assets. This doctrine "rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Meyer v. United States*, 375 U.S. 233, 236, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963). Thus, under marshalling, a senior lienholder must satisfy his claim by first resorting to property in which a junior lienholder has no interest. The doctrine is codified at 24 O.S.1991, § 4 which provides:

"Where a creditor is entitled to restore [sic-"resort"] to each of several funds for the satisfaction of his claim, and another person has an interest in or is entitled as a creditor to resort to some but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons."

The Bank also cites 42 O.S.1991, § 17 in support of its claim for marshalling. Section 17 reads:

"Where one has a lien upon several things, and other persons have subordinate liens upon or interests in, some but not all of the same things, the person having the prior lien, if he can do so without the risk of loss to himself, or injustice to other persons, must resort to the property in the following order, on the demand of any party interested:

1. To the things upon which he has an exclusive lien;

2. To the things which are subject to the fewest subordinate liens;

3. In like manner inversely to the number of subordinate liens upon the same thing; and,

4. When several things are within one of the foregoing classes, and subject to the same number of liens, resort must be had,—

(a) To the things which have not been transferred since the prior lien was created;

(b) To the things which have been so transferred without a valuable consideration; and,

(c) To the things which have been so transferred for a valuable consideration."

■ Thus, Oklahoma statutory law contains provisions designed and intended to allow for the marshalling of assets in situations such as the one at bar where there are multiple properties and multiple creditors. However, the doctrine of marshalling of assets is not without exceptions. When our state constitution was drafted, its writers had the foresight to include a provision exempting homestead property from forced sale. Okla. Const. Art. XII, § 2. Section 2 provides:

"The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon; nor shall the owner, if married, sell the homestead without the consent of his or her spouse, given in such manner as may be prescribed by law; Provided, Nothing in this article shall prohibit any person from mortgaging his homestead, the spouse, if any, joining therein; nor prevent the sale thereof on foreclosure to satisfy any such mortgage."

Although this provision does not specifically state that a homestead may not be marshalled against, its intent is clear. Homestead property is exempt from any forced sale except in those specifically enumerated cases such as for the purchase money of the homestead or for taxes due thereon. Conspicuously absent from the authorized exceptions to this constitutional provision are instances of marshalling. Those enumerated exceptions are the only claims which regard the creditor's rights to the property as equal to or exceeding the rights of the debtor.

In addition to the constitutional homestead exemption, statutory law contains a homestead exemption as well. 31 O.S.1991, § 1.

This statute provides, in pertinent part, as follows:

A. Except as otherwise provided in this title and notwithstanding subsection B of this section, the following property shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:

1. The home of such person, provided that such home is the principal residence of such person; . . ."

■ The Oklahoma Legislature has made its intention quite clear in enacting this homestead exemption. The statutory homestead exemption, as well as the constitutional homestead exemption, prohibits homestead property from being forcibly sold for the payment of debts except under the specifically enumerated exceptions. Marshalling of assets is not one of those exceptions.

■ In addition, not only do the terms of the homestead exemption provisions make it clear that the homestead is excluded from marshalling, but the equitable nature of the doctrine of marshalling of assets also militates against allowing marshalling of homestead property. The doctrine was founded in equity and natural justice and is designed to promote fair dealing. *Meyer, supra.* It is not bottomed on the law of contracts or liens, but on equitable principles to be applied in the discretion of the court. Being equitable in nature and purpose, the doctrine will not be applied where it would be inequitable to do so or where the effect would be to injure or prejudice the senior creditor, the common debtor or any other third person. Assets will not be marshalled where the consequence is to destroy a superior, or even equal, equity of another person. For that reason it is the general rule that the doctrine of marshalling cannot be invoked by a junior lienor when the result would be to deprive the debtor of his homestead or other exempt property. To do so would nullify the protection the law provides the debtor and his family in the right of homestead or other exemption, which is superior or at least equal to any equity of junior lienor to have assets marshalled. Consequently, courts have re-fused to apply the doctrine where, as here, one of the properties is exempt under state law. *See Meyer v. United States, supra; Story's Equity Jurisprudence* § 853 et seq. (1918); *In re Bailey,* 176 F. 990 (D.Utah 1910); *Nolan v. Nolan,* 155 Cal. 476, 101 P. 520, 524 (1909); *Miller v. McCarty,* 47 Minn. 321, 50 N.W. 235 (1891); *Colby v. Crocker,* 17 Kan. 527 (1877); *Equitable Life Ins. Co. v. Gleason,* 62 Iowa 277, 17 N.W. 524 (1883); 53 Am.Jur.2d, *Marshaling Assets* § 4 et seq.

The rationale for the exception to the doctrine of marshalling of assets for the homestead was well stated in *In re Bailey, supra,* at 993:

"In the ordinary case where the creditor with a right to one fund insists on the marshalling of the securities of the creditor who can resort to two, the creditor so seeking a marshalling has a superior equity to the debtor; but not so as to a homestead exemption. The Legislature, in providing for this exemption, has formulated as a rule of public policy the superiority of right of a debtor to the exempt property over that of his creditors to the payment of their debts."

In the majority of jurisdictions which have passed on the issue, it is held that the debtor has a right to compel the secured creditor to marshal away from the homestead. *See Nolan v. Nolan, supra; Miller v. McCarty, supra; Equitable Life Ins. Co. v. Gleason, supra; Frick Co. v. Ketels,* 42 Kan. 527, 22 P. 580 (1889); *Sims v. McFadden,* 217 Ark. 810, 233 S.W.2d 375 (1950); *Mounce v. Wightman,* 29 Ariz. 567, 243 P. 415 (1926). Because the law is so solicitous of the homestead estate, these courts require the secured creditor to exhaust his non-exempt property first, even if it works to the detriment of junior lienors. Speaking to this issue in *Nolan v. Nolan, supra,* where the equitable doctrine of marshalling being examined was also codified, the California court reasoned:

"[H]omestead laws should be liberally construed, and no intention should be presumed, nor should any interpretation be indulged, which is at variance with the natural and obvious purpose of the parties. The claimants, in the absence of any ex-

pression of a contrary intent, should be presumed to intend no further peril to their homestead than necessity demands, while he who receives a mortgage from them should be regarded as obtaining a mere security for his debt, and not the right to employ that security in such a mode as to needlessly imperil the homestead ... This right of the homestead claimants ... is one which they may exercise even to the detriment of junior incumbrances of the other lands. This is so, upon the principle that they have taken their junior incumbrances with knowledge of the existing equities which the homestead carries, amongst which is the important one to direct the senior mortgage to have recourse first to lands other than the homestead." 101 P. at 524.

In *Douglas County Bank v. Steele,* 54 N.D. 686, 210 N.W. 657 (1926), the Court declared: "A homestead claimant has such an interest in the property claimed as a homestead as to enable him to invoke the aid of a court of equity to compel a lien holder, who has a lien upon both homestead and other property, to resort first to the non-exempt property. Such seems to be the generally accepted rule."

Debtors' protected equity in their homestead is superior to Bank's equity interest in marshalling. Application of the marshalling doctrine to allow Bank to force the sale of exempt property although it does not have a mortgage voluntarily given by Debtors or a claim for purchase money or taxes or improvements is in direct contravention of our constitution and statutes. The fact that this equitable doctrine has been codified by statute, 24 O.S.1991, § 4, *supra,* does not defeat or change its purpose. The words of our statute recognize its equitable foundation:

"... so far as it can be done ... without doing injustice to third persons." 24 O.S. 1991, § 4.

Our decisions under the statute have consistently acknowledged the equitable basis of the doctrine. See *Vandever Inv. Co. v. H.E. Leonhardt Lumber Co.,* 503 P.2d 185 (Okla. 1972); *Muskogee Indus. Fin. Corp. v. Perkins,* 361 P.2d 1065 (Okla.1961); *First National Bank v. Foster,* 106 Okla. 240, 233 P. 762 (1925).

The spirit and purpose of the constitutional homestead exemption is to protect the family in its occupancy from improvidence and the urgent demands of creditors. *Pettis v. Johnson,* 78 Okla. 277, 190 P. 681 (1920); *Matter of Estate of Wallace,* 648 P.2d 828 (Okla.1982). Public policy dictates that exemption laws, such as homestead provisions, should be liberally construed to comport with their beneficent spirit of protecting the family home. *Matter of Estate of Wallace, supra; In re Wineland,* 3 F.Supp. 796 (N.D.Okla.1933).

Thus, we join the majority of jurisdictions and adopt the exception holding that a debtor is entitled to exclude the homestead from marshalling of assets.

QUESTION ANSWERED.

LAVENDER, V.C.J., and HARGRAVE, KAUGER and WATT, JJ., concur.

ALMA WILSON, J., concurs in result.

HODGES, C.J., and OPALA and SUMMERS, J., dissent.

HODGES, Chief Justice, with whom SUMMERS, Justice, joins, dissenting:

The majority holds that public policy and equity create an exception to doctrine of marshaling of assets when homestead property, which was knowingly mortgaged, is involved. I cannot agree.

Section 4, title 24 of the Oklahoma Statutes provides:

Where a creditor is entitled to restore [sic] to each of several funds for satisfaction of his claim, and another person has an interest in or is entitled as a creditor to resort to some but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction and without doing injustice to third persons.

Title 42, section 17 of the Oklahoma Statutes states:

Where one has a lien upon several things, and other persons have subordinate liens upon or interests in, some but not all of the same things, the person having the prior lien, if he can do so without the risk of loss to himself, or injustice to other person, must resort to the property in the following order, on the demand of any party interested:

1. To the things upon which he has an exclusive lien;

2. To the things which are subject to the fewest subordinate liens;

3. In like manner inversely to the number of subordinate liens upon the same thing; and,

4. When several things are within one of the foregoing classes, and subject to the same number of liens, resort must be had,

(a) To the things which have not been transferred since the prior lien was created;

(b) To the things which have been so transferred without a valuable consideration; and,

(c) To the things which have been so transferred for a valuable consideration.

As the majority recognizes, the purpose of these statutory provisions is to allow marshaling under the facts of this case. However, the majority suggests that these statutory provisions do not apply in this case because to do so would cause injustice to third persons, namely the debtor, which is prohibited by the provisions. This position is insupportable, especially where the debtor has voluntarily mortgaged the property and received purchase money. Any time that these statutory provisions are utilized, the debtor will forfeit some of his assets. If this forfeiture is an injustice, then, under the majority's implication, these provisions would never apply and the statutes would be a nullity. In fact, to be effective these statutes could only be construed to disallow marshaling when an injustice to the creditors would result.

The majority also would find an exception implied in section 2 of article 12 of the Oklahoma Constitution and title 31 section 1 of the Oklahoma Statutes and an exception based on equity. I cannot agree that these two provisions on which the majority relies imply an exception and, even if an exception is implied, that such an implication should override explicit statutory mandates. Neither should equitable principles be applied to negate express legislative language.

There is nothing in article 12, section 2 of the Oklahoma Constitution which prohibits marshaling toward the homestead when the homestead has been deliberately mortgaged. Article 12, section 2 declares:

> The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, *except for the purchase money;* [n]othing in this article shall prohibit any person from mortgaging his homestead ... *nor prevent the sale thereof on foreclosure to satisfy any such mortgage.*

(Emphasis added.) There is nothing in this provision that protects a homestead from sale to satisfy a mortgage on the homestead property.

Section 1, title 31 of the Oklahoma Statutes provides an exemption for homestead property "from attachment or execution and every other species of forced sale for the payment of debts." Section 5 of title 31 exempts homestead property from the protection of section 1 where the debt is incurred in exchange "[f]or the purchase money of such homestead or a part of such purchase money...."

Even though article 12 of the Oklahoma Constitution and title 31 of the Oklahoma Statutes reflect a public policy protecting homestead property from unsecured creditors, they are not public policy statements protecting the property from mortgage holders. In fact, the Oklahoma Constitution and the Oklahoma Statutes explicitly recognize the public policy and the practical necessity of allowing mortgage foreclosure on homestead property. Further, any public policy protecting the homestead property is offset by the public policy favoring mortgage holders as recognized by title 42, section 17 and title 24, section 4.

A cardinal rule when applying a statute is that the legislative intent be followed. *State ex rel. Cartwright v. Georgia–Pacific Corp.,*

663 P.2d 718 (Okla.1982). "When the intent of the legislature is plainly expressed in a statute, it must be followed without further inquiry." *In re Hamm Prod. Co.,* 671 P.2d 50, 52 (Okla.1983). The legislature clearly expressed its intent in title 42, section 17 and title 24, section 4 that assets be marshaled and that creditors be allowed to require marshaling. There is no exception to this clear expression of intent either in the Oklahoma Constitution or the Oklahoma Statutes for homestead property which has been knowingly mortgaged.

I would hold that the Oklahoma Constitution and the Oklahoma Statutes do not create or authorize an exception to the marshaling of assets when the debtor has voluntarily mortgaged the homestead property to secure payment of a debt and the Oklahoma marshaling statutes, Okla.Stat. tit. 42, § 17 and tit. 24, § 4 (1991), permit secured creditors to compel the marshaling of assets against homestead property which has been intentionally mortgaged.