THOMAS HOGAN V. G. A. MANNERS, *et al.*

23  551
47  614
48  442

1. HOMESTEAD, *in Leasehold Estate.* A party may acquire a homestead in a building occupied as a residence by his family, although the building is erected upon ground in which he has but a leasehold interest.

2. MORTGAGE OF HOMESTEAD, *Validity of.* Although a building upon leased ground is taxable by statute as personal property, and although the lessee has the right to remove the building at the termination of his lease, and although he mortgages it as personal property, yet the homestead character remains as long as the building is not removed and is occupied as a residence by his family; and such mortgage is of no validity unless his wife joins therein, or consents thereto.

3. HOMESTEAD CHARACTER OF BUILDING, *Not Destroyed.* Where it is shown that a building is occupied as a residence by the family of the owner, and neither the size nor the number of rooms appears, further than that it is a one-and-one-half-story frame building, the homestead character is not destroyed by proof that one or two rooms therein are used by himself and wife for business purposes.

*Error from Anderson District Court.*

ACTION brought by *Henry Barnes* against *G. A. Manners, Lettie Manners, F. G. Barber,* and *Thomas Hogan,* to fore-

close a chattel mortgage executed and delivered by *G. A. Manners* to said *Barnes,* upon said mortgagor's one-and-one-half-story frame house, located on lot twenty-four (24), in block forty-seven (47), in the town (now city) of Garnett, to secure the payment of $383.05, according to the terms of a certain promissory note, which the petition alleged was executed by *G. A. Manners,* to the plaintiff. *G. A. Manners* filed his separate answer, denying, without verification, each and every allegation contained in the petition, and alleged that the property described in the mortgage made by him to *Barnes,* was the homestead of himself and his wife, *Lettie Manners.* The wife also filed her separate answer, denying, without verification, the allegations contained in the petition, and alleged that the property described in the mortgage of *Barnes* was the homestead of herself and her husband. *Thomas Hogan* filed his answer, denying, without verification, each and every allegation of the petition not expressly admitted, and alleged that on the 5th day of March, 1874, at Anderson county, Kansas, he (*Hogan*) loaned the sum of $250 to said *Manners,* who therefor executed and delivered to said *Hogan* his promissory note dated March 5, 1874, and thereby promised to pay said *Hogan,* or order, the sum of $250, in one year after date, with twelve per cent. per annum interest, and that to secure the payment of the note, *Manners,* on the same day, and prior to the making of the mortgage to *Barnes,* made and delivered to said *Hogan* a chattel mortgage, and thereby sold and conveyed to *Hogan* the house mentioned in plaintiff's petition, and described in plaintiff's mortgage; that his (*Hogan's*) mortgage was duly filed, etc. *Manners* and wife filed their reply to *Hogan's* answer, denying, without verification, each and every allegation contained therein, and alleging that the house described in *Hogan's* mortgage was their homestead. Trial at the September Term, 1878, by the court without a jury, when the court found as matters of fact that—

"There is due to the plaintiff, Barnes, from G. A. Manners, $495.21, on a promissory note, and due to Thomas

Hogan, from G. A. Manners, on a promissory note, $385; that the mortgages set up by plaintiff and said defendant, Hogan, were executed on the homestead of said G. A. Manners and Lettie Manners, who are husband and wife; that said mortgages were, and each of them, executed and delivered by said G. A. Manners, without the consent of said Lettie Manners, his wife; that said mortgages were and are no lien upon the property of said homestead."

The court accordingly rendered a personal judgment against *G. A. Manners* on the notes aforesaid, but refused to decree a foreclosure of the said mortgages. *Hogan* brings the case here.

*Bergen & Whitford*, for plaintiff in error :

If a tenant erect a house on leased premises, he has the right to remove it while in possession of the premises. So where a tenant, holding from year to year, erected a cider mill and press, at his own expense, and for his own use, on the farm, it was held not a fixture, but personal property which might be removed by the tenant. (*Kutter v. Smith*, 2 Wall. 497; *Holmes v. Tremper*, 20 Johns. 29, *et seq.*) So if a person build a house upon the land of another, by the consent of the latter, who sells the land, it does not pass a property in the house to the purchaser, though it would operate as a revocation of the license under which the builder placed it there. The owner of a house may always remove it after notice of a revocation of such license, if done within a reasonable time. (1 Washb. Real Property, 5; *Russell v. Richards*, 10 Me. 429; *Dame v. Dame*, 38 N. H. 429.) Or the owner of the house might sell it by oral agreement, without writing. (35 N. H. 480.) To make a thing part of the realty by merely annexing it, requires that he who annexes the personal article should own both that and the soil to which it is annexed. (*Lancaster v. Eve*, 5 C. B., N. S., 727, 728; *Adams v. Smith*, Breese, 221.)

The evidence shows that the building which Manners erected on Hamilton's lot was for business purposes. Manners used

Hogan v. Manners.

one part of the building for a butcher shop; his wife the other for a millinery store. By far the smallest part of the building was used by Manners and his family for a residence.

If a building be erected by a tenant with a view to carry on his business, and for a residence for his family and servants engaged in that business, the residence of the family being auxiliary, and merely to enable them to carry on the business or trade to better advantage than they otherwise could, it is personalty, and may be removed by the tenant. Its size or materials are not important. (*Van Ness v. Packard*, 2 Pet. 137, 147.)

Whether a thing is to be considered as a part of the realty, or not, always depends upon its connection with the soil; but the question also depends upon other and various considerations, as well as attachment to the soil: upon the annexation of the article in question to the realty; upon the right of the parties to so use the article, and to so use the realty; upon the intention of the parties, etc. (*Cent. Branch Rld. Co. v. Fritz*, 20 Kas. 434–436, and cases there cited.)

We claim that the building in question is personalty, and not realty; that the homestead law does not apply to it; that, under the circumstances of this case, the mere annexing of the building to the realty does not constitute it real property in that sense of the law which is necessary to make it the subject of a homestead while it remains upon the rented lot. To hold the law so would enlarge homestead exemptions, by construction, to a very great extent. "Homestead laws should not be extended by construction." (*Ward v. Huhn*, 16 Minn. 169.)

*W. A. Johnson*, and *H. L. Poplin*, for defendants in error:

Plaintiff in error contends that under the constitution and laws of the state of Kansas, a person cannot have a homestead right in a house unless he is the owner of the soil. We claim that such is not a fair construction of the homestead laws of this state. The construction claimed by plaintiff is too narrow, and in conflict with the interpretation

placed on the homestead law of this and other states having a similar homestead law. A person may have a homestead where he has an equitable estate in the real estate. (15 Kas. 147, 150.)

An equitable interest in real estate, or an interest less than a freehold, will uphold a homestead interest. (11 Mich. 358; 13 Iowa, 53; 13 Wis. 478; 38 Ill. 9; 57 id. 104.) The word "land" and the phrases "real estate" and "real property" include lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal. (Gen. Stat., ch. 104, § 1, subdiv. 8.)

A homestead, to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all improvements on the same, shall be exempted, etc. (Const., art. 15, § 9.)

We submit that the legal signification of the word "owner" in the constitution is whatever interest the party owns in what constitutes the residence of his family. It may be a freehold estate, or it may be a leasehold interest. (*Pelan v. DeBrevard*, 13 Iowa, 55; *Thorn v. Thorn*, 14 Iowa, 49; Dill. Ct. Ct. 45; *Bartholomew v. West*, 2 Dill. Ct. Ct. 290.)

Plaintiff claims that inasmuch as a part of the house was used for business purposes, the residence of defendant's family was only auxiliary to the business carried on in the building.

The court finds that the mortgages were on the homestead of Manners and his wife. The building being occupied by Manners and his family, the whole building is exempt, and constitutes his homestead, and any attempted alienation by the husband without the consent of the wife is absolutely void. Although a portion of the building may have been constructed with a view of being used, and may have been used for other purposes, the building being an entirety, and not susceptible of division, the whole is exempt as a homestead, and cannot be alienated by the husband without the consent of the wife. (*In re Tertelling*, 2 Dill. Ct. Ct. 341; *Orr v. Shafer*, 22 Mich. 260.)

The opinion of the court was delivered by

BREWER, J.: This was an action to foreclose a mortgage given by defendant in error, G. A. Manners, to plaintiff in error; and the question is, whether such mortgage was invalid by reason of the facts that the mortgaged premises were the homestead of Manners and his wife, and that his wife did not join in the mortgage. The mortgage was executed April 22, 1875, and on its face purported to be a mortgage of personal property, to wit, of a one-and-one-half-story frame house situated on the lot hereinafter named. The district court found in favor of the defendants in error, and while rendering a personal judgment against G. A. Manners for the note, refused to decree a foreclosure of the mortgage.

The following facts were admitted by the parties on the trial, or were introduced in evidence: In 1873, G. A. Manners leased lot 24, in block 47, in the town (now city) of Garnett, of William Hamilton, for the purpose of erecting a frame building thereon. The lease was for a term of two years, with the privilege of holding and using the lot for a longer time; provided, however, that G. A. Manners was to give possession of the lot whenever William Hamilton should sell it, or want to build upon it himself. In either case, G. A. Manners had the right to remove the building he should erect on the lot. G. A. Manners has continued to occupy the lot with his building from year to year. He used the north part of the ground floor for a butcher shop; his wife, the south part of the ground floor for a milliner shop. The upper story, and part of the south room down stairs, were occupied by the family for a residence.

The testimony does not disclose at what time in 1873 the lease was made, nor whether the mortgage was executed before the expiration of the term of two years named in it. Perhaps this is not very material, for the lease provided for a holding after that term, and probably at the same rental, two dollars a month.

The question arising on these facts is, whether a leasehold

estate will support the homestead right.  It has already been decided that one who has only an equitable interest in land may have a homestead right therein. (*Tarrant v. Swan*, 15 Kas. 146; *Moore v. Reaves*, 15 Kas. 150.)  In the first of these cases, the homestead claimant owned an undivided one-half of the property, and in the other he had but a simple contract of purchase.  The constitutional as well as statutory provision is, "A homestead, to the extent of one hundred and sixty acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner."  The question hinges on the force to be given to the words "land" and "owner."  On the one hand, it is claimed that these words imply a title either legal or equitable to the soil itself, as distinguished from a mere right of temporary possession.  On the other, that the word "land" is given by statute a meaning which includes a mere leasehold interest, and that the owner of such an interest is therefore an owner of the land within the constitution.  "The term 'land' at common law has a two-fold meaning.  In its more general sense it is held to comprehend any ground, soil, or earth whatsoever, as meadows, pastures, woods, marshes, furze, etc.  In its more limited sense, the term 'land' denotes the quantity and character of the interest which the tenant may own in lands.  'The land is one thing,' says Plowden, 'and the estate in the land is another thing, for an estate in the land is a time in the land, or land for a time.'  When used to describe the quantity of the estate, 'land' is understood to denote a freehold estate at the least." ( Per Smith, C. J., in *Johnson v. Richardson*, 33 Miss. 462.)  Now in what sense would one naturally understand that the word was used here?  Obviously it seems to us in its general sense, as descriptive of that which is exempt, rather than of the title by which it is held.  When in ordinary discourse we speak of a tract of land, we have in thought the land, and not the ownership of it.  Here the qualifying words make this more plain; it is land to the extent of one hundred and sixty acres.  These words measure area, but do not qualify title; but we need not rest upon this

Hogan v. Manners.

general consideration. The statute defines the meaning of the word. It "includes lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal." (Comp. Laws 1879, p. 919, § 1, ¶ 8.) And this was the statutory definition prior to the adoption of the constitution, and has been continued in force ever since; (Laws 1859, p. 614, § 1, ¶ 8; Laws 1862, p. 838, § 1, ¶ 8; Laws 1868, p. 999, § 1, ¶ 8;) and whether the framers of the constitution used it in that sense, or not, is immaterial, for the homestead is granted by statute as well as by the constitution, and the same legislatures that defined the word "land" enacted the homestead statute. Now a leasehold estate is an interest in land. "An estate for years is denominated a chattel real; being an interest in land, it has the quality of immobility, which constitutes it real." (1 Hill. on Real Prop., p. 179, § 23.) A leasehold estate in land is therefore "land," within the statutory definition of the term, and an owner of the leasehold estate is an owner of land; and it matters not whether the duration of this estate be ninety-nine years, or but a single year; the character of the title or estate is the same. The owner of a leasehold estate is therefore within the letter of the homestead law; he is also within the spirit. Its purpose is not so much to give a man property as to secure his family a home. And if the home be secured, what matters it whether that home be temporary or permanent, or by what tenure or title it is held? Indeed, is not the wisdom of the statute more apparent when he who is unable to purchase a permanent, is enabled to secure to his family a temporary home; and its justice equally clear when he who is able to purchase such permanent home invests but a portion of his means in a temporary one, keeping the balance within reach of his creditors?

It will be noticed that exemption from liability for indebtedness, and inalienability without joint consent, go hand in hand in the matter of a homestead. That which secures the one, guarantees the other. They coexist, or they do not exist at all. While the authorities are not uniform, yet we think the general drift of the decisions is in harmony with these

views.   In *Sears v. Hanks*, 14 Ohio St. 301, the court, speak-
ing of the homestead law, says: "We think its provisions
protect the debtor's family as against his creditor to the enjoy-
ment of an actual homestead, irrespective of the title or ten-
ure by which it is held." In *Spencer v. Geissman*, 37 Cal.
99, it was held that one having a mere naked possession, the
title being in a stranger, may acquire a homestead right as
against everybody but the true owner.   See, further, on the
general principle : *Deere v. Chapman*, 25 Ill. 612 ; *Barthol-
omew v. West*, 2 Dillon Ct. Ct. 293 ; *McKee v. Wilcox*, 11
Mich. 358 ; *Thorn v. Thorn*, 14 Iowa, 49.   And the very
question in this case has been answered in at least three states.
(*Phelan v. De Brevard*, 13 Iowa, 53; *Conklin v. Foster*, 57 Ill.
104 ; *Johnson v. Richardson*, 33 Miss. 462.)   We think, there-
fore, that an affirmative answer is sustained by authority, and
is within both the letter and the spirit of the homestead law.
The ruling of the district court upon this was therefore correct.

But, say counsel for plaintiff in error, the mortgage was
not upon the lease-hold estate, the term in the land, but upon
the building ; that Manners listed and paid taxes on this as
personal property ; that he had the right to remove the build-
ing ; that it was therefore personal property, and as such
Manners mortgaged it.   To this, it is a sufficient reply that
it was so listed and taxed by virtue of express statutory pro-
vision. (Comp. Laws 1879, p. 522, § 31) ; that it was built
upon the land, and that not only the land — by whatever title
it is held — is exempt and inalienable without joint consent,
but also "all the improvements on the same."   Whatever
might be the case after the building was in fact removed, the
homestead right remains until such removal.

Another proposition of counsel is, that this was not a home-
stead, because partly used for business purposes.   Upon the
evidence as it is preserved, we cannot say that the court erred
in holding this a homestead.   The size of the building, fur-
ther than that it was a one-and-one-half-story house, is not
shown.   Whether chiefly used for business or residence pur-
poses, does not clearly appear.   The fact that a party may

have his store, or shop, or office in a part of his residence, will not of itself destroy its homestead character. We are not called upon to decide whether the occupation by the family of the owner of a single room in a large building used chiefly for stores and offices, will give to the entire building a homestead character. All we do decide is, that where a building, whose size and number of rooms is not shown, is occupied as a residence by the family of the owner, its home-stead character is not destroyed by proof that a single room or two is used by the owner for business purposes. (*In re Tertelling*, 2 Dill. Ct. Ct. 341; *Orr v. Shafer*, 22 Mich. 260; *Lazell v. Lazell*, 8 Allen, 575; *Mercier v. Chase*, 11 Allen, 194; *Goldman v. Clark*, 1 Nev. 607; *Ackley v. Chamberlain*, 16 Cal. 181; *Kelley v. Baker*, 10 Minn. 154; *Phelps v. Rooney*, 9 Wis. 70.)

The effect of the temporary abandonment of the home-stead is disposed of by the decision of this court in *Hixon v. George*, 18 Kas. 253.

There being no other question in the case, the judgment will be affirmed.

All the Justices concurring.