### In re WINELAND.
### No. 1804.

### District Court, N. D. Oklahoma.
### June 17, 1933.

J. J. Smith, of Miami, Okl., for bankrupt.

Ballinger & Ballinger, of Miami, Okl., for trustee.

Scott Ferris, of Oklahoma City, Okl., for Bank of Picher.

KENNAMER, District Judge.

John D. Wineland leased a tract of land in Picher, Okl., for a term of ten years and erected on it a building, which was used and is being used as a residence for his family and for business purposes. The lease expired. Wineland continued in possession, with the consent of his landlord, under a month to month tenancy. He was adjudged a bankrupt, claimed this property as exempt because it was his homestead, and prosecutes this proceeding to review the referee's ruling, which denied the claim and held the property to be not exempt.

It is assumed there was proof before the referee of some agreement reserving title to the building in Wineland and giving him the right to remove it. Otherwise, under well-settled principles, the building belongs to the landlord (section 8555, Comp. St. Okl. 1921; Shelton v. Jones, 66 Okl. 83, 167 P. 458, L. R. A. 1918A, 830; Scrivner v. Pope, 143 Okl. 246, 289 P. 311), and neither the bankrupt, the trustee or creditors, would have any interest in it.

The claim that this property is exempt as the bankrupt's homestead must be determined by the laws of Oklahoma, the domicile of the bankrupt. 11 USCA § 24; Vought v. Kanne (8 C. C. A.) 10 F.(2d) 747.

Article 12, §§ 1 and 2, Oklahoma Constitution, and sections 6595 and 6597, Comp. St. Okl. 1921, provide, so far as here material, that, in case the homestead is used for both residence and business purposes, the homestead interest shall not exceed in value the sum of $5,000 (the property here involved is less than $5,000 in value), and the homestead is exempt from forced sale for the payment of debts.

Neither the Constitution nor the statutes attempt to designate or restrict the character of title or interest necessary to support the claim of exemption, nor to define "homestead." The Supreme Court of Oklahoma, however, has said that the word "homestead" has both a popular and a legal meaning which is identical, that it means the residence of the family—the place where the home is—and was used in the Constitution of Oklahoma with that connotation, McCray v. Miller, 78 Okl. 16, 184 P. 781, 186 P. 1089; Preston v. Ottawa County Nat. Bank, 138 Okl. 133, 280 P. 581; has indicated that mere possession, without title, is sufficient to support the homestead right, Zehr v. May, 67 Okl. 97, 169 P. 1077, L. R. A. 1918C, 431, and has squarely held that the homestead right may exist in a lease for a term of years and that ownership in fee is not essential, Miller v. Farmers' State Bank of Temple, 137 Okl. 183, 279 P. 351.

It seems to me that these opinions of the Supreme Court of Oklahoma clearly indicate what the decision in this case must be

and foreshadow the holding that the building in question is exempt as a homestead. This view is strengthened by the rule that exemption laws are to be liberally construed, First National Bank v. Burnett, 122 Okl. 255, 254 P. 95; Morey v. James, 136 Okl. 174, 276 P. 707, and that "the administration of an exemption law should comport with the beneficent spirit that prompted its enactment. A court of equity especially should not attempt to defeat the exemption by niceties in practice. It should be helpful to those whose condition requires them to invoke it." Smith v. Thompson (8 C. C. A.) 213 F. 335, 336. And see In re Hewitt (D. C. Ohio) 244 F. 245; In re McFarland (D. C. Wash.) 49 F.(2d) 342; Sellers v. Bell (5 C. C. A.) 94 F. 801.

An allowance of the claim of homestead in the instant case is not without precedent to sustain it, although the constitutions and statutes construed, as might be expected, differ somewhat from those of Oklahoma.

In Hogan v. Manners, 23 Kan. 551, 33 Am. Rep. 199, cited with approval by the Supreme Court of Oklahoma in Miller v. Farmers' State Bank, supra, 137 Okl. 183, 279 P. 351, holding that a homestead might be acquired in a building erected on leased land, the court, per Brewer, J., said of the homestead law: "Its purpose is not so much to give a man property as to secure his family a home. And if the home be secured, what matters it whether that home be temporary or permanent, or by what tenure or title it is held? Indeed, is not the wisdom of the statute more apparent when he who is unable to purchase a permanent, is enabled to secure to his family a temporary home; and its justice equally clear when he who is able to purchase such permanent home invests but a portion of his means in a temporary one, keeping the balance within reach of his creditors?"

In Cullers v. James, 66 Tex. 494, 1 S. W. 314, 315, the court said: " 'House' is necessarily embraced in the word 'homestead.' Franklin v. Coffee, 18 Tex. 417 [70 Am. Dec. 292]. If the head of a family owns a house, and no interest or estate in the land on which it stands, the house is a chattel. If he occupies it with his family, it is their home. He may be compelled to move it from one lot to another as fast as legal process can oust him, still, * * * it is the home of a family, and is embraced in the spirit and purpose, if not the letter, of the constitution."

In Watts v. Gordon, 65 Ala. 546, the court said: "It is the house, the dwelling-place,—not of necessity, an estate or interest in lands,—which must be protected and preserved. Usually it is accompanied by such estate or interest; but, if it is not, it is the misfortune of the occupant, and of those who are dependent upon him, and can not subject it to a liability, to which it would not be exposed if such an estate or interest attended it."

And see In re Vincent (D. C. La.) 28 F.(2d) 396.

In discussing the steps finally leading to individual ownership of property, Blackstone says: "In the case of habitations in particular, it was natural to observe, that even the brute creation, to whom everything else was in common, maintained a kind of permanent property in their dwellings, especially for the protection of their young; that the birds of the air had nests, and the beasts of the field had caverns, the invasion of which they esteemed a very flagrant injustice, and would sacrifice their lives to preserve them. Hence a property was very soon established in every man's house and homestall; which seem to have been originally mere temporary huts or movable cabins, suited to the design of providence for more speedily peopling the earth, and suited to the wandering life of their owners, before any extensive property in the soil or ground was established."

The homestead provisions of the Oklahoma Constitution and statutes have as their primary object and intention, not the securing of a particular interest in real property, but the protection of the family place of abode, the home. In reason it cannot be said that he who is able to acquire title to realty may have the protection of the law, while he who is unable to acquire such title is denied it. The home does not lose its character as such because of its owner's lack of wealth or because of the ownership of the property on which it is located. Any other construction of the law frustrates its beneficent purpose and nullifies the obvious intention of the framers of the Constitution. The court should not, under the guise of construing the statute, read into it a condition or provision which the Legislature has seen fit to omit.

The building in question should be set aside to the bankrupt as his homestead under the laws of Oklahoma.

The equipment used by the bankrupt to operate a moving picture show business in the building should also be set aside to him as exempt property, being "tools" and "apparatus" "used in a trade or profession" within the purview of subdivision 5, § 6595,

Comp. St. Okl. 1921. Bogardus v. Salter, 127 Okl. 4, 259 P. 561; Campbell v. Honaker's Heirs (Tex. Civ. App.) 166 S. W. 74.

Counsel will submit a decree accordingly.