Robert A. **BLAIR** and Donald L. Blair, **Plaintiffs/Appellants,**

v.

State of Oklahoma, ex rel., **OKLAHOMA TAX COMMISSION,** **Defendant/Appellee.**

No. 87035.

Court of Civil Appeals of Oklahoma, Division III.

Feb. 28, 1997.

As Corrected April 17, 1997.

Steven M. Harris, and Randall T. Duncan, Doyle & Harris, Tulsa, for Appellants.

Kim D. Ashley, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, for Appellee.

## MEMORANDUM OPINION

ADAMS, Chief Judge:

In 1984 and 1985, the Oklahoma Tax Commission issued tax warrants against the property of Appellants Robert A. Blair and Donald L. Blair (the Blairs) for taxes, penalty and interest attributable to state sales tax unpaid by the Blairs. In December of 1986, each of the Blairs pleaded guilty to eleven counts charging them with embezzlement by a trustee due to a failure to remit the taxes covered by the warrants and other taxes. Judgment and sentencing was deferred as to each of the Blairs conditioned on the fulfillment of rules of probation for five years including payment of restitution totaling $108,438.04 by December of 1991 according to a schedule. The restitution period was extended, and the Blairs finally completed paying the balance due under the restitution schedule in January of 1994.

Although the Commission conceded that interest on the unpaid amounts did not accrue for purposes of the restitution, *i.e.*, failure to pay interest did not violate the terms of the Blairs' probation, the Commission took the position that interest did accrue for purposes of civil liability and refused to release the warrants. According to the Commission, Robert A. Blair owed $17,888.69 and Donald L. Blair owed $13,030.37 in interest and penalty on the tax liability covered by the tax warrants.[1]

The Blairs filed this action in district court asking the trial court to determine their rights under the restitution agreement, contending that the Commission had effectively agreed that the Blairs' obligation to the Commission would be satisfied upon completion of the criminal restitution. In addition, the Blairs claimed the tax warrants could not attach to their homestead property and asked the trial court to determine that the warrants created no liens against their homestead. The Commission filed a motion to dismiss any action to challenge the amount of the tax debt and attached material outside the petition to support its argument. The trial court sustained that motion, ruling that the only issue remaining was whether the tax warrant liens attached to the homestead property. Subsequently, ruling on the Commission's summary judgment motion, the trial court concluded that the tax warrants were valid liens on the Blairs' homesteads and entered judgment denying the Blairs' claims. The Blairs then filed this appeal claiming errors in both decisions. Because the trial court considered material outside the petition in ruling on the Commission's dismissal motion, we review both orders under the standards applicable to summary judgments. *See* 12 O.S.1991 § 2012(B).

In addressing the Blairs' claim that summary adjudication in favor of the Commission was inappropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact and one party was enti-

1. The difference in the sums owed is not ex-      plained in the record on appeal.

tled to judgment as a matter of law. *Perry v. Green,* 468 P.2d 483 (Okla.1970). All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to the Blairs. *Ross v. City of Shawnee,* 683 P.2d 535 (Okla.1984). We are limited to the issues actually presented below as reflected by the record which was before the trial court rather than one that could have been assembled. *Frey v. Independence Fire and Casualty Co.,* 698 P.2d 17 (Okla.1985).

### Tax Warrant Issues

■ The Blairs' claim is based principally on their belief that their entire tax liability, both criminal and civil, was satisfied when they paid the amount stated in the restitution agreement. According to the Blairs, by entering into the restitution agreement and not including interest and penalties in the amount due under that agreement, the Commission's lawyer agreed to waive interest and penalties they might have otherwise owed. The Commission denies it had any waiver agreement with the Blairs concerning the accrual of interest and penalties during the time period covered by the restitution agreement.

The Commission has the power to waive or remit interest and penalties under 68 O.S. 1991 § 220. However, no waiver or remission of interest or penalties is effective for an amount over $1500 unless approved by a judge of the district court of Oklahoma County, and then only after the application for approval of the waiver or remission has been on file with the court clerk for at least twenty days prior to the entry of any order approving or disapproving the waiver or remission. 68 O.S.1991 § 220(b).[2] The interest and penalty at issue here exceeded the limitation imposed in § 220(b), and the Blairs did not present any evidence or even argue that they had complied with § 220(b).

■ The Blairs also challenge the validity of the tax warrants issued and filed in 1985 and argue that the Commission's attempt to collect any further sum is time-barred. Specifically, the Blairs claim no as-

sessments were issued for taxes owed for September 1983 and April 1985. Section 223 of Title 68 provides that "no proceedings by tax warrant or in Court without the previous assessment for the collection" of tax shall be begun after the expiration of three years from the date a return was filed. The Blairs filed tax returns for the September 1983 taxes on November 2, 1983, and for the April 1985 taxes on June 21, 1985. A tax warrant for the April 1985 taxes was filed September 6, 1985 and one for the September 1983 taxes was filed March 1, 1984. The Commission admits it is unable to produce copies of assessments it claims were issued for the two time periods but argues assessments must have been issued before the tax warrants were ultimately issued.

The warrants themselves were issued within three years of the filing of the returns. The warrants describe the total amount due as a sum of the "total tax," the interest which had accrued to the date of the warrant, and penalties owed, "together with interest on the total tax at the rate of 18% per annum from the date hereof until paid." The Blairs claim that by attempting to collect interest which accrued during the time of the extension of the restitution agreement via the enforcement of its warrants, the Commission is essentially trying to make an assessment more than three years after the filing of the returns. However, the Blairs have cited no authority which requires the Commission to make an assessment of interest and penalties. Section 223 refers to the assessment of tax, not the accrual of interest or penalty. It has no application to the accrual of interest and penalties upon taxes which have already been assessed.

In challenging the validity of the tax warrants because of the alleged failure of the Commission to issue assessments, the Blairs are improperly challenging the validity of the method of collection used by the Commission. Section 225 of Title 68 provides the method for the appeal of "a tax, or the method of collection or enforcement thereof." 68 O.S. 1991 § 225(h). This procedure requires a hearing before the Commission and a direct appeal to the Oklahoma Supreme Court.

---

**2.** Amended in 68 O.S.Supp.1993 § 220, without change to part b.

The Blairs failed to avail themselves of their opportunity to challenge the Commission's action in issuing the tax warrants and cannot question their validity in this proceeding.

### Homestead Issues

■ Although the validity of the tax warrants was beyond the trial court's jurisdiction, the Commission correctly recognized that the trial court could determine whether those warrants were effective as liens against the Blairs' homesteads. The Blairs argue the warrants have the same force and effect as a judgment, *see* 68 O.S.1991 §§ 221, 230, and 231. They argue that judgments are not valid liens against homesteads, citing 31 O.S. 1991 § 1(A)[3] and Article XII, Section 2 of the Oklahoma Constitution.[4] Accordingly, the Blairs argue, the warrants cannot be a lien against homestead property.

The Blairs' argument overlooks 68 O.S. 1991 § 231 and § 234. Under 68 O.S.1991 § 231(I), the tax warrants created a lien against the Blairs' real property and under 68 O.S.1991 § 234(a), "[a]ll taxes, interest and penalties imposed by the provisions of this article, or any state tax law, are hereby declared to constitute a lien in favor of the state upon all franchises, property, and rights to property, whether real or personal" of the person owing tax. Forced sale is not at issue, only whether the tax liens created by tax warrants issued in 1985 "attached" to the Blairs' property.

The words "attach" and "attachment" have more than one definition. In the context of this case, several definitions are potentially relevant. Under commercial law, a lien will "attach," that is, "be connected," to property once basic prerequisites exist, thereby rendering enforceable a security interest. 12A O.S.1991 § 9–203. As the federal court in *Burrus v. Oklahoma Tax Commission,* 59 F.3d 147, 149–150 (10th Cir.1995), stated:

> The law dictionaries reveal that there are two distinct meanings for the term "attach-

ment." For example, Ballentine's Law Dictionary (3d ed. 1969) provides two different definitions: first, "A provisional remedy for the collection of a debt, which is incidental to an action against the debtor ... for the purpose of having the property available in satisfaction under execution and sale upon a judgment obtained against the debtor in the action;" and, second, "The actual attaching, that is, the seizure and disposition of the debtor's property under a writ of attachment." Black's Law Dictionary (6th ed. 1990) illustrates the same dichotomy. One definition of attachment is: "A remedy ancillary to an action by which plaintiff is enabled to acquire a lien upon property or effects of defendant for satisfaction of judgment which plaintiff may obtain." Another meaning offered in Black's is: "The act or process of taking, apprehending or seizing ... property...." Read in context, it seems clear that the Oklahoma statute uses the word "attachment" in this second sense of the word, while it is the primary meaning that is relevant in the tax lien context.

The clear import of the Homestead Exemption is to prevent the family home from being sold out from under the family. Thus, tit. 31, § 1 states that such property shall be "exempt from attachment or execution and every other species of forced sale for the payment of debts." This statute is the codification of Okla. Const. art. XII, § 2, which provides simply that "the homestead of the family shall be protected from forced sale for the payment of debts." Viewed in this context, it is plain that the Oklahoma statute refers to "attachment" as "a species of forced sale"—a physical act of seizure. There is nothing in the homestead law which would suggest that the state may not "attach" a lien on the homestead as a "provisional remedy" subject to the future sale of the property which would have no immediate impact on

---

**3.** This section decrees that homestead property shall be "exempt from attachment or execution and every other species of forced sale for the payment of debts" except as otherwise provided.

**4.** According to these provisions, "[t]he homestead of the family shall be, and is hereby pro-

tected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon."

the family living within. Thus, the presence of the word "attachment" in the statute does not, in our view, prevent the tax commission's lien from "attaching," within the meaning of Oklahoma Law or Supreme Court precedent, at the time of filing. (Footnote omitted.)

This analysis is consistent with *Tillery v. Parks,* 630 F.2d 775 (10th Cir.1980), in which the court recognized a distinction between the ability to enforce a lien through foreclosure and the attachment of that lien under Oklahoma homestead laws. In *Tillery,* the court concluded that a lien could attach to homestead property in Oklahoma even if the homestead laws prevent the lien from being executed upon. 630 F.2d at 776–78. The United States Supreme Court also has recognized a distinction between foreclosure on and attachment of a tax lien in the homestead context. *United States v. Rodgers,* 461 U.S. 677, 690–91, 702 n. 31, 103 S.Ct. 2132, 2140–41, 2147 n. 31, 76 L.Ed.2d 236 (1983).

We find the analysis by the federal courts persuasive. There is a distinction between "attachment" in the context of a forced sale, which is clearly prohibited by Art. XII, § 2 and its statutory codification, 31 O.S.1991 § 1, and "attachment" which denotes "connection to," as in commercial law or as a provisional remedy. We conclude that under both § 231 and § 234, a lien for unpaid taxes was created, and that the lien attached to the Blairs' homesteads.

Although the Blairs argue that it is nonsensical to attach liens to properties which cannot be sold to satisfy the lien, we conclude attachment does serve a purpose. Their argument ignores that it is the homestead character, not some inherent nature of the properties, which prevents immediate execution and sale. Attachment of the tax liens to the properties protects the State's interest and its right to force a sale of the properties if there is a subsequent alteration in that homestead character. The trial court correctly concluded as a matter of law that the liens created by the tax warrants attached to all property owned by the Blairs, without regard to its present homestead character.

### Conclusion

The undisputed facts shown by the evidentiary materials presented to the trial court are consistent only with the conclusion that the Commission was entitled to judgment as a matter of law on the claims made by the Blairs. Accordingly, the trial court's judgment is affirmed.

AFFIRMED.

GARRETT, J., concurring in part and dissenting in part.

I dissent to that part of the majority opinion relating to homesteads.

JONES, P.J., concurs.