2001 OK 82

The STATE of Oklahoma,
Petitioner–Appellant,

v.

ONE 1965 RED CHEVROLET PICKUP,
VIN/C1445S172380 Bearing Oklahoma
License 019CUT, Respondent–Appellee.

No. 93,354.

Supreme Court of Oklahoma.

Oct. 9, 2001.

Richard L. Dugger, District Attorney, Second Judicial District, Ricky A. McPhearson, Assistant District Attorney, Arapaho, OK, for Appellant.[1]

Randolph S. Meacham, Clinton, OK, for Appellee.

OPALA, J.

¶ 1 The dispositive issue presented on certiorari is whether the legislative exemption of certain automobiles from forced sale (upon execution or other court-issued process) for satisfaction of a debt bars the State from invoking in this case the statute that authorizes the forfeiture of property used in the commission of a crime. We answer in the negative.

# I

## THE ANATOMY OF LITIGATION

¶ 2 By invoking the provisions of 21 O.S. Supp.1993 § 1738 (A),[2] the State of Oklahoma [State] sought on 28 January 1999 forfeiture of a 1965 red Chevrolet pickup truck, VIN/C1445S172380. Notice was sent to the registered owner Jerry Johnson [owner or Johnson]. He interposed an objection to the forfeiture. It is rested on the claimed protection conferred on an owner by the homestead-and-exemption statute, 31 O.S. Supp.1998 § 1(A)(13).[3] According to the parties' stipulation, (1) Johnson is the registered owner of the pickup truck in suit; (2) the fair market value of the vehicle is less than three thousand dollars; (3) there are no liens against the pickup truck; and (4) the owner used the vehicle to transport property stolen in two burglaries. The trial court *refused to decree forfeiture*, ruling the vehicle exempt by the terms of 31 O.S. Supp.1998 § 1(A)(13). The Court of Civil Appeals [COCA] *affirmed* the order. The State's certiorari paperwork brings to our attention an *unpublished opinion* by another COCA division[4] which appears to hold that the last cited statute *does not exempt from forfeiture* a rifle seized under the authority of 63 O.S.1991 § 2-503(A)(9),[5] a part of the Oklahoma Uniform Controlled Dangerous Substances Act.[6] We granted certiorari to settle an interdivisional conflict on an important first-impression question.

# II

## ARGUMENTS ON CERTIORARI

### A.

### *Owner's Theory for Defeating Forfeiture*

¶ 3 Owner argues that the State's attempt to forfeit his vehicle is defeasible by the

---

1. Identified as petitioner's counsel are only those lawyers whose names appear on the certiorari paperwork.

2. The pertinent terms of 21 O.S. Supp.1993 § 1738(A), (H) (the seizure-and-forfeiture provisions for property used in the commission of a crime) are:

   "A. Any commissioned peace officer of this state is authorized to seize any vehicle owned by or registered to the defendant used . . . in the attempt or commission of any act of burglary in the first or second degree . . . Said property may be held as evidence until a forfeiture has been declared or a release ordered.
   * * *
   H. At the hearing the state shall prove by clear and convincing evidence that property was used in the attempt or commission of an act . . . with knowledge by the owner of the property."

3. The relevant terms of 31 O.S. Supp.1998 § 1(A)(13) provide:
   "A. Except as otherwise provided in this title and notwithstanding subsection B of this sec-

   tion, the following property *shall be reserved to every person residing in the state, exempt from attachment or execution and every other species of forced sale for the payment of debts, except as herein provided:*
   * * *
   13. *Such person's interest, not to exceed Three Thousand Dollars ($3,000.00) in value, in one motor vehicle;* * * * "
   (emphasis added).

4. State of Oklahoma, *ex rel.* Oklahoma State Bureau of Narcotics and Dangerous Drugs Control, Malcolm Atwood, Director v. One (1) Remington 552, .22 Rifle, Serial # 1880177, No. 92,527, Court of Civil Appeals, Div. III (April 1, 1999).

5. The pertinent terms of 63 O.S.1991 § 2-503(A)(9) provide for the forfeiture of "[a]ll weapons possessed, used or available for use in any manner to facilitate a violation of the Uniform Controlled Dangerous Substances Act, Section 2-101 *et seq.* of the title."

6. *Id.*

homestead-and-exemption statute that protects from "attachment or execution and every other species of forced sale" one motor vehicle, the value of which is $3,000.00 or less.[7] He relies specifically on *State ex rel. Means v. Ten (10) Acres of Land*,[8] which teaches that the protection of a homestead from forced sale shields that character of property from forfeiture in proceedings brought under the provisions of the Uniform Controlled Dangerous Substances Act.[9] According to the owner's argument, if the homestead-and-exemption statute protects a homestead from forfeiture (allowed by the terms of 63 O.S.1991 § 2–503(A)(8)),[10] it should likewise shield his motor vehicle from forfeiture that is pressed under the general seizure-and-forfeiture statute.[11]

### B.

### *The State's Theory for Declaring Forfeiture*

¶ 4 According to the State, a motor vehicle used in the commission of a felony is not exempt from forfeiture by the homestead-and-exemption statute. When in *State v. Ten Acres*[12] the court extended homestead protection to forfeitable land, its opinion was addressing a constitutionally exempt family interest in one's home, not that which was

7. For the pertinent terms of the homestead-and-exemption statute, see 31 O.S.Supp.1998 § 1(A), *supra* note 3.

8. 1994 OK 71, ¶ 18, 877 P.2d 597, 601.

9. The relevant terms of 63 O.S.1991 § 2–503(A)(8) provide:
   "The following shall be subject to forfeiture:
   * * *
   8. All real property, including any right, title and interest in the whole of any lot or tract of land and any appurtenance or improvement thereto, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of the Uniform Controlled Dangerous Substances Act...."

10. *Id.*

11. 21 O.S.Supp.1993 § 1738, *supra* note 2.

12. *Supra* note 8.

13. The pertinent provisions of Art. XII § 2, Okl. Const., are:

asserted in one's personal property. The provisions of Art. XII § 2, Okl. Const.[13] protect the family homestead from forced sale for the payment of debts. The terms of 31 O.S. Supp.1998 § 1 implement that fundamental-law provision.[14] Although the text of § 1 also protects from forced sale certain personal-property articles, the shield it provides for personalty does not vitalize any constitutional text.

### III

### NO SOURCE OF LAW–CONSTITUTIONAL, STATUTORY OR COMMON LAW–SHIELDS PERSONAL PROPERTY FROM A § 1738 FORFEITURE

■ ¶ 5 No constitutional protection of homesteads is invocable to shield personalty from forfeiture.[15] The sole issue here is whether the *statutory exemption* in 31 O.S.Supp.1998 § 1[16] frees the vehicle now in forfeiture from the mandatory provisions of 21 O.S.Supp.1993 § 1738;[17] *if not,* whether the common law will afford to the owner a shield of protection from the forfeiture sought by the State.[18] There is neither ambiguity in, nor conflict between, the terms of § 1 and the provisions of § 1738. Legisla-

"The *homestead of the family* shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvement thereon;...."
(emphasis added).

14. *Blair v. State ex rel. Oklahoma Tax Comm'n*, 1997 OK CIV APP 10, ¶ 16, 935 P.2d 1197, 1200.

15. *See* Part III(A) for a discussion of constitutional homesteads.

16. For the pertinent provisions of 31 O.S.Supp. 1998 § 1, see *supra* note 3.

17. For the provisions of 21 O.S.Supp.1993 § 1738, see *supra* note 2. *See* Part III(B) ¶¶ 8–12, *infra,* for a discussion of 31 O.S.Supp.1998 § 1 and 21 O.S.Supp.1993 § 1738.

18. See Part III(C) ¶¶ 13–14, *infra,* 4 for a discussion of the common law and § 1738 forfeiture.

tive intent can easily be ascertained from the plain language of the homestead-and-exemption statute.[19]

## A.

### Homestead Exemptions Are Not Implicated By This Case

■ ¶ 6 This court's analysis of Oklahoma's constitutional-and-statutory-homestead provisions has emerged from a variety of contexts.[20] Their settled meaning is that the *constitution,* Art. XII § 2, Okl. Const.,[21] and its *implementing statute,* 31 O.S. Supp. 1998 § 1,[22] are designed to secure the *family home.*[23] Oklahoma jurisprudence is replete with reaffirmance of this cherished security in one's family abode.[24] The protection from forfeiture, which the law affords to homesteads, is firmly rested on a recognized interest of the entire family. Although our pronouncement in *State v. Ten Acres*[25] makes no reference to the precise fundamental-law underpinnings of 31 O.S. Supp.1998 § 1, the court's decision in that case is firmly anchored in the constitutional homestead protection.[26]

¶ 7 *In short, homestead exemptions are in a class by themselves. They are derived from a constitutional grant.*[27] *Personal-property exemptions stem solely from the*

19. When the court is called upon to determine if a statute applies in a given scenario, its analysis focuses on the intent of the legislature. *Cooper v. State ex rel. Dep't of Pub. Safety,* 1996 OK 49, ¶ 10, 917 P.2d 466, 468. The law-making body is presumed to have expressed its intent in the statute's language and to have intended what the text expresses. *TXO Production Corp. v. Oklahoma Corp. Comm'n,* 1992 OK 39, ¶ 7, 829 P.2d 964, 969. Only where the intent cannot be ascertained from a statute's text, as it occurs when ambiguity or conflict with other statutes does happen, may rules of statutory construction be employed. *Cooper, supra,* at ¶ 10, at 468; *TXO, supra,* at ¶ 7, at 969.

20. This court has determined the impact of constitutional-and-statutory-homestead provisions presented to it in various circumstances. The statutory homestead is not subject to forfeiture sought under the provisions of the Oklahoma Uniform Controlled Dangerous Substances Act, 63 O.S.1991 § 2–503. *State v. Ten Acres, supra* note 8, at ¶¶ 17–18, at 601. Where conveyance of a homestead appears fraudulent, the homestead exemption may not be invoked to defeat the collection of past-due alimony and child support. *Burrows v. Burrows,* 1994 OK 129, ¶¶ 17–19, 886 P.2d 984, 991–92. When homestead property is at issue, the constitutional-and-statutory-homestead exemptions recognize an exception to marshaling of debtors' assets. *In re Martin,* 1994 OK 48, ¶ 18, 875 P.2d 417, 422. A building, erected on leased land used for both business and residential purposes by a bankrupt tenant with lessors' consent, is exempt under the homestead-and-exemption statute. *In re Wineland,* 3 F.Supp. 796, 798 (N.D.Okl.1933).

21. For the pertinent language of Art. XII § 2, Okl. Const., see *supra* note 13.

22. For the pertinent provisions of 31 O.S.Supp. 1998 § 1, see *supra* note 3.

23. The purpose of the constitutional and statutory homestead exemption is *to safeguard the entire family in their occupancy of the home. State v. Ten Acres, supra* note 8, at ¶ 17, at 601; *Burrows, supra* note 20, at ¶ 12, at 989; *In re Martin, supra* note 20, at ¶ 18, at 422; *Matter of Estate of Wallace,* 1982 OK 80, ¶ 17, 648 P.2d 828, 831; *Hensley v. Fletcher,* 1935 OK 458, ¶ 9, 44 P.2d 63, 65; *Pettis v. Johnston,* 1920 OK 224, 190 P. 681, 693; *In re Carothers' Estate,* 1946 OK 111, ¶ 16, 167 P.2d 899, 902; *In re Wineland, supra* note 20, at 798; *Blair, supra* note 14, at ¶ 16, at 1200–01.

24. *Id.*

25. *State v. Ten Acres, supra* note 8, at ¶ 16, at 601.

26. Although the term "family" is used in Art. XII § 2, Okl. Const. and not in the § 1 language, the purpose of the legislative text has been construed to benefit the family. *State v. Ten (10) Acres* teaches that the *constitutional* and *statutory* homestead provisions were designed for the protection of an entire family. *State v. Ten (10) Acres, supra* note 8, at ¶ 16, at 601 (citing *In re Carothers' Estate, supra* note 23, at 902, which relies on *Brooks v. Butler,* 1939 OK 132, ¶ 13, 87 P.2d 1092, 1095; *Pettis, supra* note 23, at 693); *Burrows, supra* note 20, at ¶ 12, at 989. The legislative enactment of the homestead exemption implements and vitalizes the constitutional homestead provision of Art. XII § 2. *Burrows, supra* note 20, at ¶ 13, at 990 n. 23.

27. Whether a homestead held by a *single person* may be forfeited for its use by the owner in the commission of a crime *is not implicated* in this cause and need not be reached here. Suffice it to say that because the legislative language used for the § 1 personal-property exemptions refers to *persons,* rather than to a family, a different analysis may be applied.

We note that the language of Art. XII § 1, Okl. Const., was changed effective 1 November 1997. The amended text appears to vest a homestead right in a "person." Its relevant terms are:

*terms of § 1. They are devoid of constitutional underpinnings. A family homestead is absolutely protected from a § 1738 forfeiture. The § 1 personal-property exemption the owner interposed in this case calls for a vastly different analysis.*

### B.

#### *The Personal–Property Exemptions of 31 O.S.Supp.1998 § 1 Are Unavailable As A Shield Against a § 1738 Forfeiture*

■ ¶ 8 The *personal-property exemptions* of § 1 are intended to protect debtors (or other kindred obligors) *against forced sales to satisfy unpaid debts.* Unpaid debts are one's *individual obligation.* While the statute's unambiguous terms provide a personal-property exemption when a debtor's *individual liability* is sought to be enforced, they do not extend so far as to relieve one of the § 1738 forfeiture's consequences. Forfeiture proceedings are neither explicitly addressed nor implicated by the text of the homestead-and-exemption statute.[28]

■ ¶ 9 Personal property that is to be forfeited in consequence of its use in criminal activity must be viewed as entirely different from that which is subjected to a *"forced sale"* to satisfy the payment of debt. Forfeiture is a government's expropriation of the owner who used the subject property in the commission of certain crimes. It is effected, upon seizure, by a judicial proceeding, which *divests* one of property *without compensation but does not require that it be sold.*[29] *Unlike in the application of § 1 exemptions, seizure (cum severance of title) rather than "forced sale" is the gravamen of forfeiture statutes.*

■ ¶ 10 In contrast to scenarios affected by § 1 exemptions, no personal liability is imposable in § 1738 forfeitures. **It is only the object (or the *res*) to be forfeited which stands liable for unconditional delivery to the State.**[30] A forfeiture proceed-

---

"A. The homestead of any *person* in this State, not within any city or town, shall consist of not more than one hundred sixty acres of land, which may be in one or more parcels, to be selected by the owner. * * * "
(emphasis added.)
The provisions of Art. XII § 2, Okl. Const., which list the created exemptions, *remain unchanged.* For the text of § 2 see *supra* note 13.

**28.** Forfeitures are *not listed as an express exception* to the § 1 shield, nor do the terms of § 1 *explicitly indicate the statute was intended to guard against forfeiture-related seizures.*
The text of Art. XII § 2, Okl. Const., *supra* note 13, and 31 O.S.Supp.1998 § 5 enumerates those debts to which the homestead exemption is inapplicable. The pertinent terms of 31 O.S.Supp. 1998 § 5 provide:
"The exemption of the homestead provided for in this chapter shall not apply where the debt is due:
1. For the purchase money of such homestead or a part of such purchase money.
2. For taxes or other legal assessments due thereon.
3. For work and material used in constructing improvements thereon."
Judicially determined instances of debts to which the homestead exemption does not apply have been recognized. The homestead may be legally levied upon and sold for the payment of alimony where monetary alimony is decreed and adjudged to be a lien upon all real estate owned by the defendant/husband. *Haven v. Trammell,* 1920 OK 348, 193 P. 631, 633. Where conveyance of a homestead appears fraudulent, the homestead exemption may not be invoked as a shield by a parent to insulate him from satisfaction of past-due alimony and child support. *Burrows, supra* note 20, at ¶ 19, at 992.

**29.** The pertinent terms of 21 O.S. Supp.1993 § 1738 provide:
"S. Whenever any property is forfeited pursuant to this section, the district court having jurisdiction of the proceeding may order that *the forfeited property may be retained for its official use* by the state, county, or municipal law enforcement agency which seized the property."
(emphasis supplied.)

**30.** In HOLMES, THE COMMON LAW 10–12 (Mark De-Wolfe Howe ed., Harv. Univ. Press 1963) (1881), the author discusses the early concept of *object liability.* An object or "thing" that caused the harm was held legally liable (whether that thing was a physical object, an animal or a slave) rather than the object's owner. Vengeance, not compensation, was the original objective. Liability came to be visited upon the offending source. The owner was required to turn over the offending thing to the victim so that the latter might obtain revenge. In short, the "liability of the owner was simply a liability of the offending thing." *Id.* at 12. **Forfeiture is based on the very same theory.** It is the object to be forfeited to the State that is liable. There is no connected personal liability by anyone. For a discussion of the early English law in which this underlying concept was employed ultimately to develop three types of forfeiture, see Part III(C) *infra.*

ing is one *in rem*.[31] It is predicated upon the property's illegal use.[32] **In short, the § 1738 liability of a *res* may not be exonerated, either in whole or in part, by any personal-property exemption extended by § 1.**

¶ 11 The reference in § 1 to *a forced sale in payment of a debt* presupposes the existence of a levying judgment *creditor*. When a personal-property-exemption statute is invoked, a levying party's *status as creditor* is determinative.[33] Because a forfeiture proceeding lacks the characteristics attributable to a forced sale for the satisfaction of one's debt, the government—in pressing its claim for personal-property's forfeiture—is entirely free from the restraints of the homestead-and-exemption provisions that *serve to limit the remedies of a creditor.*

¶ 12 In sum, Oklahoma law provides no protection from legislatively authorized *civil forfeiture of personal property* used in the commission of a crime. *Nor does § 1738 spell out any exceptions to personal property*

*that may be subject to forfeiture.*[34] In the face of constitutional and legislative silence, this court is powerless to create an exception unless one be recognized by some norm of unabrogated common law.

## C.

### There Is No Rule of Common Law That Protects Personal Property From a § 1738 Forfeiture

¶ 13 Absent any legislative exemption that frees the vehicle in suit from a § 1738 forfeiture, we turn to the common law for guidance in deciding whether any exceptions are affordable by that legal corpus. The common law remains in full force unless some enactment explicitly provides to the contrary.[35] A presumption favors the preservation of common-law rights.[36]

¶ 14 At the time of ratification of the Bill of Rights, the English law recognized *three kinds of forfeiture:* (1) of deodands,[37] (2)

---

**31.** The term *"in rem"* is Latin for "against a thing." An *in rem* proceeding determines the status of a thing and the rights of persons associated with respect to that thing. BLACK'S LAW DICTIONARY 797 (7th ed.1999).

**32.** *In re 1632 N. Santa Rita,* 166 Ariz. 197, 801 P.2d 432, 437 (Ariz.App.1990); *People v. Allen,* 767 P.2d 798, 800 (Colo.App.1988); *Butterworth v. Caggiano,* 605 So.2d 56, 61–62 (Fla. 1992)(Grimes, J. dissenting) (citing *DeRuyter v. State,* 521 So.2d 135, 138 (Fla. 5th DCA 1988)).

**33.** An ex-wife seeking to enforce alimony and child support awards against an ex-husband is not the kind of creditor to which the homestead exemption was meant to apply. *Burrows, supra* note 20, at ¶ 14, at 990. Although workers' compensation awards are exempt from creditors' claims for collection on a debt, a wife seeking alimony and support for minor children is not a creditor, nor is her claim a debt. *Commons v. Bragg,* 1938 OK 355, ¶¶ 10–18, 80 P.2d 287, 290–91.

**34.** Under the plain terms of 21 O.S. Supp.1993 § 1738, all *property* is subject to forfeiture. Some courts have recognized that relief from forfeiture is due that *owner* who proves that the property's wrongful use was without his knowledge or consent. These cases have been treated as statutory exceptions from forfeiture. *People v. $8,450 U.S. Currency,* 276 Ill.App.3d 952, 213 Ill.Dec. 473, 659 N.E.2d 103, 105 (1995). In the use of this construction, the legal maxim, *"inclusio unius est exclusio alterius,"* (to express or

imply one thing implies the exclusion of the other) would be deemed applicable.

**35.** The relevant terms of 12 O.S.1991 § 2 provide:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; ..."

**36.** *Reaves v. Reaves,* 1905 OK 32, 82 P. 490, 495; *State Mut. Life Assur. Co. of America v. Hampton,* 1985 OK 19, ¶ 3, 696 P.2d 1027, 1035, 1036 (Opala, J., concurring); *Brashier v. Farmers Ins. Co., Inc.,* 1996 OK 86, ¶ 8, 925 P.2d 20, 24 (overruled in part on another issue). The common law forms "a dynamic and growing" body of rules that changes with the conditions of society and hence may be modified from time to time. *Brigance v. Velvet Dove Restaurant, Inc.,* 1986 OK 41, ¶ 11, 725 P.2d 300, 303, *quoting McCormack v. Oklahoma Pub. Co.,* 1980 OK 98, ¶ 7, 613 P.2d 737, 740. Flexibility, capacity for growth and adaptation are the peculiar boast and excellence of the common law. *McCormack, supra,* at 740.

**37.** The ancient law of deodands is founded on the fiction that an inanimate object (or an animal) may be guilty of wrongdoing. The term "deodand" derives from the Latin *Deo dandum* (a thing to be given to God.) BLACK'S LAW DICTIONARY 392 (5th ed.1979). The value of an inanimate object (or an animal) causing the death of

upon conviction of a felony or treason,[38] and (3) in statute-based proceedings.[39] Of these three classes, only the last survives in the United States.[40] Colonial courts and those during the period of the Articles of Confederation—*i.e.*, before ratification of the U.S. Constitution—exercised jurisdiction *in rem* in the enforcement of English and local forfeiture statutes.[41] *No common-law exceptions ever allowed personal property to become immune from statute-based forfeitures.*

### D.

### *There Are No Compelling Public–Policy Considerations For Departing From The Beaten Path Of The Common Law*

¶ 15 In the face of clear historical antecedents, only a valid public-policy exception would militate in favor of departing from a long-standing tradition that recognizes no exceptions to personal property eligible for forfeiture as an instrumentality of the crime. We are mindful that forfeiture is a primary weapon against crime. Two main purposes are served by this institution: *deterrence and punishment.*[42] Both goals would be thwart-

the King's subject was forfeitable to the Crown. The forfeited object—the "deodand"—was originally used to provide funds for religious masses for the dead. That use of the proceeds later changed from solely religious to charitable purposes. When the latter purpose ceased, the deodand became a source of revenue for the Crown, and the Crown's retention of the monies was justified as a penalty for carelessness. *Austin v. United States*, 509 U.S. 602, 611, 113 S.Ct. 2801, 2806, 125 L.Ed.2d 488 (1993) (citing Holmes, THE COMMON LAW, c. 1, *supra* note 30, and 1 William Blackstone, COMMENTARIES *300, 301). For an extended discussion of the three types of forfeiture in existence in England during the late 18th century, see *Austin, supra,* 509 U.S. at 611–16, 113 S.Ct. at 2806–09; *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 680–85, 94 S.Ct. 2080, 2090–92, 40 L.Ed.2d 452 (1974). *See also State v. Bisaccia,* 45 N.J. 504, 213 A.2d 185, 187 (1965).

**38.** The second type of forfeiture applied only to those convicted of felony or treason. All property, real and personal, of those convicted of a felony was forfeitable to the Crown. The institution paraded under the verbal garb of *forfeiture of estate.* This kind of forfeiture, grounded in punishment, was justified by the belief that property was a right derived from society which could be lost by a violator of society's laws. *Austin, supra* note 37, 509 U.S. at 611–12, 113 S.Ct. at 2806–07 (citing *Blackstone, supra* note 37, at *381, 382 and *The Palmyra,* 25 U.S. (12 Wheat) 1, 14, 6 L.Ed. 531 (1827)). For a brief discussion of instrumentalities of crime and their genesis in the law of forfeiture, see *Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 303, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782 (1967); *Bisaccia, supra* note 37, at 187.

**39.** Of the most notable statutory forfeitures known to the English law were those which affected commodities and vessels used in violation of customs and revenue laws. *Calero–Toledo, supra* note 37, 416 U.S. at 682, 94 S.Ct. at 2092; *Austin, supra* note 37, 509 U.S. at 611–13, at 113 S.Ct. at 2807.

**40.** Deodands did not become part of the common-law tradition in the United States. *Austin, supra* note 37, 509 U.S. at 613, 113 S.Ct. at 2807 (citing *Calero–Toledo, supra* note 37, 416 U.S. at 682, 94 S.Ct. at 2091). The English law of deodands became extinct lore when it was finally abrogated in 1846. A general awareness of its absurdity was aroused by its application to railway engines that killed ·a human being. J.H. Baker, An Introduction To English Legal History 347 (3d ed.1990).

The U.S. Constitution, Art. III § 3, cl. 2, commands:

"The Congress shall have power to declare the punishment of treason, but no attainder of treason shall work corruption of blood, or forfeiture except during the life of the person attainted."

The first Congress abolished forfeiture of estate as an incident of punishment for felons. *Austin, supra* note 37, 509 U.S. at 613, 113 S.Ct. at 2807. Oklahoma also abolished the English law's forfeiture-of-estates rule. Art. 2 § 15, Okl. Const.; *Grooms v. Thomas,* 1923 OK· 825, 219 P. 700, 701–02.

**41.** *Id.*

**42.** Statutory *in rem* forfeiture has been recognized as penal in nature. *Austin, supra* note 37, 509 U.S. at 614, 113 S.Ct. at 2808 (citing *Peisch v. Ware,* 8 U.S. (4 Cranch) 347, 2 L.Ed. 643 (1808)). Although referencing a different enactment, the U.S. Supreme Court noted that Congress' purpose, which underlies forfeiture provisions, was two-fold: deterrence and punishment. *Id.* 509 U.S. at 620, 113 S.Ct. at 2811 (citing *Calero–Toledo, supra* note 37, 416 U.S. at 686, 94 S.Ct. at 2093).

There is nothing in the terms of 21 O.S. Supp. 1993 § 1738 which contradicts the historical understanding of forfeiture as "punishment." The "innocent owner" provisions of § 1738 reveal a focus on punishment based on the actor's *scienter.* The pertinent terms of 21 O.S. Supp.1993 § 1738 (H–J), which require an owner's guilty knowledge, provide:

ed if the provisions of § 1 were to bar forfeiture of personal property listed in that section as exempt from "forced sale for the payment of debts."

¶ 16 Public policy dictates that exemption laws be liberally construed to comport with their beneficent spirit of protecting the family home.[43] Liberal construction cannot be a means of defeating a positive law or a rule established by judicial precedent.[44] While abrogation of the common law lies well within this court's statutory power,[45] it should not be resorted to when, as here, there is neither a compelling reason nor any public-policy consideration for changing the common law's strictures.[46]

¶ 17 In sum, there are no constitutional, statutory or common-law grounds for concluding that State seizure of any personal property listed as exempt by the provisions of § 1 is protected from a § 1738 forfeiture.

## IV

## SUMMARY

¶ 18 The homestead provisions of Art. XII § 2, Okl. Const.,[47] do not shield personal property from a § 1738 forfeiture. The constitutional homestead exemption is intended to protect families rather than just record owners. That exemption may not be used as a sword to defeat positive law and to protect from government seizure personal property that constitutes an instrumentality of the crime.[48]

¶ 19 The homestead-and-exemption statute, 31 O.S. Supp.1998 § 1,[49] is patently uninvocable in a § 1738 forfeiture proceeding of a vehicle. Its terms, which deal with forced sales for satisfaction of an individual obligor's debt, do not constitute a defense against a § 1738 forfeiture claim. The § 1 exemptions of personal property from forced sale do not extend to *in rem* proceedings for forfeiture of personal property used in the commission of a crime. Forfeiture process is neither implicated in, nor addressed by, the text of § 1. The forfeiting government is not to be characterized *as a creditor* against whom the § 1 exemption was meant to apply. There are no constitutional, statutory or common-law exceptions to any personal property that must stand subject to a § 1738 forfeiture.

¶ 20 The common law does not recognize any personal immunity of the kind the owner interposes to save his *res* from forfeiture. There are no compelling public-policy considerations for departing from that norm of unwritten English law. Today's pronouncement is in keeping with the public policy intended to be served by both the homestead-and-exemption as well as by the forfei-

"H. At the hearing the petitioner shall prove by clear and convincing evidence that property was used in the attempt or commission of an act specified in subsection A of this section or is property described in subsection B of the section with knowledge by the owner of the property.

I. The claimant of any right, title, or interest in the property may prove the lien, mortgage, or conditional sales contract to be bona fide and that the right, title, or interest created by the document was created without any knowledge or reason to believe that the property was being, or was to be, used for the purpose charged.

J. In the event of such proof, the court may order the property released to the bona fide or innocent owner, lien holder, mortgagee, or vendor if the amount due such person is equal to, or in excess of, the value of the property as of the date of the seizure, it being the intention of this section to forfeit only the right, title, or interest of the purchaser, except for items bearing a counterfeit mark or used exclusively to manufacture a counterfeit mark."

---

**43.** *In re Wineland, supra* note 20, at 798 (citing *First National Bank v. Burnett,* 1927 OK 57, 254 P. 95, 96 and *Morey v. James,* 1928 OK 704, 276 P. 707, 708); *Burrows, supra* note 20, at ¶ 12, at 989 (citing *In re Martin, supra* note 20, at ¶ 18, at 422); *State v. Ten Acres, supra* note 8, at ¶ 17, at 601.

**44.** *Estate of Wallace, supra* note 23, at ¶ 32, at 833 34 (citing *In re Wineland, supra* note 20).

**45.** *Brigance, supra* note 36, at ¶ 11, at 303; *McCormack, supra* note 36, at ¶ 7, at 740.

**46.** *Id.*

**47.** For the pertinent terms of Art. XII § 2, Okl. Const., see *supra* note 13.

**48.** *Burrows,* supra note 20, ¶ 17, at 991 (citing *Palm Beach Sav. & Loan Ass'n., F.S.A. v. Fishbein,* 619 So.2d 267, 271 (Fla.1993)).

**49.** For the pertinent terms of 31 O.S. Supp.1998 § 1, see *supra* note 3.

ture statute. In short, the § 1 exemption from forced sales for payment of debt provides no relief from a § 1738 forfeiture claim pressed against a vehicle used in the commission of a crime.

¶ 21 On certiorari previously granted upon the State's petition, the Court of Civil Appeals' opinion and the trial court's order are vacated; the cause is remanded for further proceedings to be consistent with today's pronouncement.

¶ 22 ALL JUSTICES CONCUR.